ADOLPH SCHLITTEN, Plaintiff, *v.* WALKER D. HINES, as Director General of Railroads, Operating OCEAN STEAMSHIP COMPANY OF SAVANNAH, Also Known as the SAVANNAH LINE, Defendant.

First Department, March 4, 1921.

Carriers — carrier of freight — liability of carrier terminates when consignee refuses shipment — new contract for reshipment of goods from point beyond line makes carrier initial carrier — new contract made with carrier for reshipment — right of carrier to contract to ship goods beyond line — evidence shows delay in reshipment caused by defendant's negligence — Carmack Amendment does not relieve defendant carrier from own negligence.

An initial carrier's liability under the original acceptance of goods for transportation beyond its line ends when they reach the point of destination and are refused by the consignee at that place, and the carrier,

on the refusal of the consignee to accept the goods, is under no obligation under the original contract of carriage to return the goods to the shipper, and is within its rights when it advises the shipper of the fact and awaits further instructions.

But if, after the non-acceptance of the goods by the consignee, the parties enter into a new contract for reshipment, then the carrier will be deemed to be the initial carrier from the point of original destination.

In an action against a steamship company predicated both on a breach of a contract of carriage of goods and on negligence, it appeared that the goods were delivered to the defendant for shipment to an inland point in Georgia; that the goods were rejected by the consignee on arrival; that, on the request of the defendant, the shippers directed the return of the goods and sent what they called two straight bills of lading signed by themselves and also the two original bills of lading duly indorsed, and that. there was a delay, not accounted for, of four and one-half months in the return of the goods.

*Held*, that the making of a new contract was indicated by the fact that the goods were returned over the same route as was used in forwarding them; that the shippers had no new contract with the inland carrier in Georgia; that the defendant asked for the original bills so that it might regain possession of the goods stored in Georgia, and that none of the communications that subsequently passed between the parties indicated that the services of the defendant in directing the reshipment were gratuitous.

A corporation carrying over a portion of a continuous line of transportation may contract to carry beyond the terminus of its line, and may also contract to receive goods away from its terminus to be transported to such terminus over the route of another carrier, and to be forwarded over its route.

Furthermore, there was sufficient evidence to charge the defendant with negligence, not only because of the delay in forwarding the goods from New York city to Philadelphia, to which place they were directed to be returned, after they arrived in New York, but also for the delay that occurred before the goods started on their way from Georgia.

The Carmack Amendment, upon which defendant relies, although it declares that the initial carrier is liable for damages notwithstanding that the damage was occasioned by one of the connecting railroads, does not relieve defendant from liability for its own negligence.

MOTION by the plaintiff, Adolph Schlitten, for a new trial on a case containing exceptions, ordered to be heard at the Appellate Division, First Department, in the first instance, after a dismissal of the complaint at the close of plaintiff's case on a trial before the court and a jury at the New York Trial Term in March, 1920.

*David T. Smith* of counsel [*Heymsfeld & Weiss*, attorneys], for the plaintiff.

*Herbert Barry* of counsel [*Dallas S. Townsend* with him on the brief; *Barry, Wainwright, Thacher & Symmers*, attorneys], for the defendant.

GREENBAUM, J.:

The action is brought upon the assigned claim of the firm of Pottash Bros. of Philadelphia. On July 12, 1918, defendant, a common carrier, accepted from that firm, at New York city under two bills of lading, forty bales of bags for immediate transportation to Conyers, Ga., which is a short distance inland from Savannah, Ga. The goods were transported by boat to Savannah and thence by rail on the Central Railroad of Georgia to Conyers. They arrived at Conyers on July 25, 1918. The purchasers of the goods at Conyers, who were to pay for them by sight draft, bills of lading attached, rejected the goods, which were thereupon stored by the railroad company. On August third defendant wrote to the consignors at Philadelphia, requesting instructions for immediate disposal of the property and asking them " please send us your bill of lading or shipping receipt." Not receiving any reply, defendant wrote a similar letter on August sixth, and on August tenth Pottash Bros. answered, instructing defendant to return the goods to them at Philadelphia. In the letter they inclosed what they called two straight bills of lading signed by themselves and also the two original bills of lading duly indorsed which had been issued by defendant upon the original consignment to Conyers. Notwithstanding that defendant had been instructed on or about August tenth to return the goods to the assignors at Philadelphia, it appears that they only reached Savannah on the return carriage in October and were received on board defendant's vessel on October sixteenth, reaching New York three days later, October nineteenth. On October twenty-first defendant wrote to plaintiff's assignors at New York advising them of the arrival of the merchandise. Despite the fact that Pottash Bros. repeatedly wrote during October and November to defendant inquiring as to the whereabouts of their goods, it was not until December 7, 1918,

that they were advised by the defendant that the goods would be delivered to them within a few days. Notwithstanding this explicit notification, the goods were not delivered as promised and after some considerable lapse of time the consignors were notified that in order to secure the goods it would be necessary for them to pay accumulated storage and freight charges in New York. These charges were duly paid and the goods were then delivered at Philadelphia in the early part of February, 1919. The goods were sold at the earliest opportunity at a loss of upwards of $1,900, owing to the fact that the market value of the goods had been steadily declining from twenty-eight and one-half cents in September to twelve cents in December and nine cents in February.

The foregoing facts must be deemed as admitted not merely because of the dismissal of the complaint, but also by reason of the stipulation read into the record. The action was predicated both upon breach of contract of carriage and upon negligence. The answer was a denial of the material allegations and set up no affirmative defense or excuse for delay.

At the end of plaintiff's case defendant moved to dismiss the complaint chiefly on the ground that no contract of initial carriage from Georgia between Pottash Bros. and defendant had been shown and that the Central Railroad of Georgia Company was the initial carrier and the only one responsible for the delay.

The defendant contended that its liability as initial carrier under the original acceptance of the goods at New York city for Conyers, Ga., ended when they reached the place of destination and were refused by the purchasers at that place. Such undoubtedly is the law. It is also well settled that upon the refusal of the purchaser to accept, the defendant was under no obligation under the original contract of carriage to Georgia to return the goods to the plaintiffs, and that the defendant was entirely within its rights to merely advise the shipper of the fact and to await further instructions. But if it be a fact that after the non-acceptance of the goods by the purchaser in Georgia the parties in effect entered into a new contract for the reshipment of the goods, then the defendant would be deemed to be the initial carrier from

Georgia to Philadelphia. (*Wien* v. *N. Y. C. & H. R. R. R. Co.*, 166 App. Div. 766.)

The underlying question in the case is, was there a new contract made between the parties for the transportation of the merchandise from Conyers to Philadelphia, the place of business of plaintiff's assignors?

When Pottash Bros. sent a letter to defendant under date of August 10, 1918, inclosing the two original bills of lading with the request to have the goods forwarded to them at Philadelphia, they acted strictly in accordance with the defendant's letter of August 3, 1918, to them, which concluded with the words: " Please send us your bill of lading or shipping receipt with instructions for immediate disposal of the property." There were also inclosed in the letter of August tenth two so-called new bills of lading made by the plaintiff's assignors. Of course, these were not bills of lading strictly speaking, but they throw light upon the nature of the transaction and the relationship of the parties that were then being established.

Defendant claims that its actions were gratuitous and in the nature of an accommodation to the shippers in receiving the original bills of lading, so that the goods might be readily obtained from the storage warehouse in Georgia where they had been placed after the purchaser's refusal to accept them. The delivery of the indorsed original bills of lading entitling the holder to receive the goods was tantamount to a constructive delivery of the goods to the defendant. The circumstance that when a new contract was made between defendant and Pottash Bros. for the return of the goods, the goods were at Conyers and not at Savannah where defendant's steamship was docked is not controlling. Defendant had the right to make a contract for the carriage of the goods notwithstanding that the starting point was elsewhere than along the line of its own route. A corporation carrying over a portion of a continuous line of transportation may contract to carry beyond the terminus of its route, and may also contract to receive goods away from its terminus to be transported to such terminus over the route of another carrier, and to be forwarded over its route. (*Swift* v. *Pacific Mail Steamship Co.*, 106 N. Y. 206.)

The significant facts that indicate the making of a new contract with the defendant are: (1) That the goods were returned over the same route to New York that was used in forwarding the goods from New York to Conyers; (2) that the consignors had made no new contract with the Central Railroad of Georgia; (3) that defendant asked for the original bills so that it might regain possession of the goods stored in Georgia; (4) that none of the communications that subsequently passed between the parties indicated that the services of the defendant in directing the reshipment were gratuitous, or in the nature of a mere accommodation. The fact that no bill of lading was delivered to Pottash Bros. by defendant is not significant nor inconsistent with the entering into a new contract without any bill of lading. (Moore Carriers [2d ed.], 176, citing *Texas Midland R. R.* v. *H. L. Edwards & Co.,* 56 Tex. Civ. App. 643; 121 S. W. Rep. 570; *Aton Piano Co.* v. *Chicago, M. & St. P. R. Co.,* 152 Wis. 156.)

It seems to us too that, irrespective of the foregoing considerations, there was enough evidence to charge defendant with negligence, not only because of the delay in forwarding the goods from New York to Philadelphia after they had reached New York, but also for the delay that occurred before the goods started on their way from Georgia.

Defendant was particularly advised of the shippers' address in Philadelphia by November 1, 1918, and yet there was an unexplained delay of about three months before the goods were delivered in Philadelphia. The delay in Georgia of six weeks is also unexplained by the defendant. There were thus four and one-half months delay which it was incumbent upon the defendant to explain. There was no explanation as to how the mistake of directing the goods to New York city instead of to Philadelphia occurred, whether through the mistake of the defendant or of the Central Railroad of Georgia.

As to the Carmack Amendment to the Hepburn Bill amending the Interstate Commerce Act (34 U. S. Stat. at Large, 593, 595, § 7, amdg. 24 id. 386, § 20) upon which defendant relies, although it declares that the initial carrier is liable for damages notwithstanding that the damage was occasioned by one of the connecting railroads, it does not relieve defendant from liability for its own negligence.

When the shipment herein was made and bills of lading issued the Carmack Amendment had been superseded by the First and Second Cummins Amendments. (38 U. S. Stat. at Large, 1196, 1197, chap. 176; 39 id. 441, 442, chap. 301.)

The shipper may sue the defendant even if it were not the initial carrier, if it be established that the defendant was negligent while acting as a carrier of the goods over its own line. (*Varnville Furniture Co.* v. *Charleston & W. C. Ry. Co.,* 98 S. C. 63; 79 S. E. Rep. 700.)

It follows that the exceptions taken on the trial must be sustained and a new trial ordered, with costs to plaintiff to abide the event.

CLARKE, P. J., DOWLING and MERRELL, JJ., concur; LAUGHLIN, J., concurs in the result on the ground that the defendant is responsible for its own negligence with respect to delay at New York on the return shipment.

Exceptions sustained and new trial ordered, with costs to plaintiff to abide event. Settle order on notice.