235 So.2d 548 (1970)
WOOD-HOPKINS CONTRACTING CO., a Corporation, Appellant,
v.
MASONRY CONTRACTORS, INC., Appellee.
No. M-44.
District Court of Appeal of Florida, First District.
May 26, 1970.
*549 Martin Sack, Jr., Jacksonville, for appellant.
Edward H. Robinson, Jacksonville, for appellee.
WIGGINTON, Judge.
Defendant contractor has appealed a final judgment in favor of plaintiff subcontractor for the balance claimed to be due plaintiff under its masonry subcontract with defendant. The case was tried by the court without a jury and the material facts are not in dispute. Appellant contends that the trial court applied to the facts an erroneous principle of law in holding that it was indebted to its subcontractor in the amount claimed.
Appellant was the general contractor for the construction of an apartment building in Atlanta, Georgia. The contractor entered into a contract with subcontractor by which the latter agreed to furnish all necessary labor, material, and equipment to install and clean all masonry work in the building in strict accordance with the plans and specifications. The general conditions of the contract specified the type of brick masonry material which the subcontractor was required to install as follows:
"Face brick shall be 24" x 2 1/4" x 3" and shall be used for all brick exposed in the finished work. Face brick shall be Miami Stone, color as selected by the Architect. * * *"
The Miami Stone face brick specified in the contract is a distinctive concrete product manufactured solely by Miami Stone of the Southeast, Inc., and has unique face characteristics, physical appearance in texture. The subcontractor purchased from the manufacturer the type of brick as specified, and properly installed it in *550 the building in strict accordance with the plans and specifications. When the masonry work performed by the subcontractor was substantially completed, it was discovered that water leakage had occurred through the brick installation into the interior of the building. Investigation and chemical analysis revealed that the leakage was occurring through the mortar bond between the Miami Stone caused by a failure of the mortar to adhere to the brick. Expert testimony indicated that an acidic component of the stone reacted with the mortar to destroy its surface alkalinity. The alkaline characteristic of the mortar resulting from its content of cement and lime reacted against the acid surface of the brick preventing a tight bond between the mortar and the brick, thus allowing water to seep through the wall into the building. An expert engineer who performed an analysis of the masonry work expressed his opinion that the acid on the bricks' surface resulted from a defect in its manufacture or treatment  possibly a mold releasing compound which allowed the removal of the brick from the mold during manufacture which the manufacturer had failed to remove or clean from the brick before selling and delivering them to the subcontractor. The contractor, upon discovery of the condition caused by the latent defect in the brick, called upon the subcontractor to correct the condition by waterproofing the exterior walls of the building. Upon the subcontractor's refusal to accede to this demand, the contractor proceeded to have the condition corrected at a cost of $12,255.00.
Because of the foregoing, the contractor withheld from final payment due the subcontractor the cost of correcting the defective condition of the walls for which amount the subcontractor brought this suit. At the conclusion of the evidence the trial court rendered judgment in favor of the subcontractor for the balance of the contract price due him without deducting therefrom any amount expended by the contractor in making the exterior walls of the building watertight.
The general conditions of the contract between the parties contain the following provisions:
"Unless otherwise specified all materials shall be new and both workmanship and materials shall be of good quality. The Contractor shall, if required, furnish satisfactory evidence as to kind and quality of materials.
* * * * * *
"The Contractor shall remedy any defects due to the faulty materials or workmanship and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of final payment, or from the date of the Owner's substantial usage or occupancy of the Project, whichever is earlier, and in accordance with the terms of any special guarantees provided in the Contract. The Owner shall give notice of observed defects with reasonable promptness. All questions arising under this Article shall be decided by the Architect subject to arbitration, notwithstanding final payment."
By this appeal the contractor contends that the subcontractor purchased from the manufacturer brick containing a latent defect which prevented a watertight bonding of the mortar and the brick thereby resulting in a seepage of water into the interior of the building. Appellant contends that under the terms of the contract quoted above the subcontractor expressly warranted that the materials to be used by him would be new and of good quality, and that he would remedy any defect due to faulty materials used by him in the performance of his subcontract. Based upon these provisions of the contract appellant asserts that appellee breached its express warranty that the materials furnished would be of good quality as a consequence of which appellant is entitled to damages in the amount it was required *551 to expend in correcting the condition caused by the latent defect in the brick, and the court erred in denying this claim.
There is no dispute but that the type of brick specified in the contract was of a particular type manufactured by only one supplier. The subcontractor purchased and installed the exact type of brick called for in the specifications. The latent defect present in the brick was not discernible by the exercise of care and skill in inspecting them, and was present in the brick through no fault and with no knowledge of the subcontractor. There is no dispute but that the brick were installed strictly in accordance with the plans and specifications of the contract, and no fault was found in the workmanlike manner in which the installation was made.
The general rule on the question presented by this appeal is enunciated by the author of American Jurisprudence as follows:
"* * * Moreover, it has been held that if there is a latent defect in bricks sold, caused by unfit clay, and not discoverable by the exercise of care and skill in inspecting them after they are manufactured, and a contractor in good faith and without knowledge of the defect buys the bricks and uses them in constructing a building which is accepted by the owner, the contractor is without fault though the defect in the bricks is subsequently developed by their exposure to the weather, and he is not answerable to the owner for the latent defect or liable for the amount of damage to the building caused by such defect."[1]
The foregoing rule stems, at least in part, from the case of Wisconsin Red Pressed Brick Co. v. Hood[2] in which, under an essentially similar factual situation as present in the case sub judice, the Supreme Court of Minnesota said:
"But appellant contends that Hood [subcontractor] is responsible to it [contractor] for the latent defect in the bricks, and that it is entitled to recoup against him the amount of damage to the buildings caused by such defect. We cannot agree with appellant. Undoubtedly, if Hood had manufactured the brick himself, he would then, so to speak, be manufacturer of both the brick and the buildings, and would be liable for the damage to the buildings caused by such latent defect in the brick. But Hood did not manufacture the brick, had no knowledge of the defect in them, acted in good faith, and exercised reasonable care and skill. No amount of care and skill would have discovered the defect, and his contract was completed, and the building accepted by the refrigerator company, before the defect was discovered. Even though an article is furnished for a particular use, if the vendor is not the grower or manufacturer, there is, as a general rule, no implied warranty against latent defects. * *"
The fact that the building involved in the Hood case quoted above had been completed and was accepted by the owner before the defect was discovered would appear to be immaterial to the decision.
The author of Corpus Juris Secundum states the rule applicable to the question considered herein to be as follows:
"* * * Moreover, it has been held that a builder is not liable for the result of latent defects in material purchased from a reputable dealer."[3]
From the foregoing authorities it would appear that under the facts of *552 this case appellee incurred no liability for the damages caused by the latent defect in the brick under the legal theory of implied warranty. Furthermore, since the damages suffered were caused by a latent defect in the brick not discernible by the exercise of reasonable diligence, it cannot be said that appellee can be held liable in damages on the theory of negligence. Indeed, appellant does not contend that appellee's liability is based upon either of the foregoing legal theories.
It is appellant's position that by the provisions of its contract above quoted appellee expressly warranted that the brick to be furnished by it would be of good quality, and that this warranty was breached because of the latent defect in the brick which caused the damages suffered. Such position overlooks or fails to take into account the legal significance of the entire provision of the contract which constitutes the express warranty sued upon. The provision referred to is as follows:
"Unless otherwise specified all materials shall be new and both workmanship and materials shall be of good quality. The Contractor shall, if required, furnish satisfactory evidence as to kind and quality of materials."
It is our view that the covenant to furnish materials "of good quality" is qualified by the "unless otherwise specified" phrase of this provision by virtue of the specification which requires appellee to purchase and install only Miami Stone which the owner knew was manufactured by and could be procured only from one manufacturer, to wit, Miami Stone of the Southeast, Inc. By requiring appellee to furnish only brick of a certain distinctive type produced by a single manufacturer, appellee was relieved and held harmless from its covenant to furnish only brick "of good quality". Under the terms of the contract appellee had no freedom of choice either as to the selection of the type of brick it would furnish or the manufacturer from whom such material could be procured. Having released appellee from the covenant to furnish brick "of good quality" by having "otherwise specified" that only Miami Stone be used in the performance of the masonry subcontract, the fact that the brick used by appellee contained a latent defect unknown to it cannot be said to constitute a breach of express warranty.
For the reasons above stated we are inclined to the view that the trial court did not err in holding the subcontractor harmless for the damages caused by the latent defect in the brick specified by the owner and architect in this case. If either appellant or the owner of the building has a claim for damages caused by the latent defect present in the brick purchased from the manufacturer, it does not lie against the subcontractor herein. The judgment appealed is accordingly affirmed.
JOHNSON, C.J., and SPECTOR, J., concur.
NOTES
[1] 13 Am.Jur.2d 29, Building, Etc. Contracts, § 27.
[2] Wisconsin Red Pressed Brick Co. v. Hood (1897), 67 Minn. 329, 69 N.W. 1091.
[3] 17A C.J.S., Contracts § 515d, p. 857.