MIDWEST EMERY FREIGHT SYSTEM, INC. *v.* IMC, INC.

[No. 3-675A114. Filed June 23, 1977.]

*Charles H. Grodnik, Thorne & Yoder,* of Elkhart, for appellant.

*William D. Bontrager, Bontrager, Spahn, Atwater & Arko,* of Elkhart, for appellee.

GARRARD, J.—A consignor (IMC) brought this action against a carrier (Midwest) for damages caused by delay and injury to goods being returned to it by the consignee. The trial court awarded damages of $3,178.50. We find that damages should be reduced to $3,037.38 and the judgment affirmed in that amount.

IMC had a contract to manufacture 3,000 steel truck-roof support bows for Gindy Manufacturing Corp., the consignee. On January 20, 1972 IMC shipped the 3,000 bows from its Elkhart, Indiana plant to the consignee in Pennsylvania using Midwest as the carrier. The bows were delivered January 21st. When the consignee inspected the bows it found that 1,950 were defective. These it returned to the consignor via the carrier. However, this shipment was left at an Ohio truckstop and delivery to the consignor was not attempted until August 31, 1973.

During the intervening months IMC made numerous inquries to the carrier regarding the whereabouts of the bows and the need to file a claim. On November 22, 1972, IMC filed a claim for the lost bows. When the bows finally arrived the following August, it was discovered that they had been improperly handled and had become distorted and corroded. IMC concluded that they were only valuable for scrap and that the cost of handling them would exceed scrap value. It therefore refused to accept delivery. On November 13, 1973, IMC filed a claim for damages resulting from the delay and damage to the bows. (In October 1972 it had ceased doing business with the consignee and had returned to the consignee the machinery necessary to correct the defects in the bows.)

The bill of lading for the bows provided that claims for loss, damage or delay would be precluded unless filed in writing with the carrier within nine (9) months after "delivery." The parties concede that federal decisions interpreting such claim of loss provisions under 49 USCA, § 20 (11) hold that public policy reasons preclude a carrier from waiving them.[1]

On appeal the carrier asserts three errors: (1) The original consignment was delivered January 21, 1972, and since no claim was filed for nondelivery within nine months thereafter, IMC is barred from recovery because the attempted delivery of the damaged bows in August 1973 will not revive its rights; (2) In assessing damages the court erred in not reducing the award by the scrap value of the bows; and (3) In assessing damages the court erred in not reducing the award by $141.12 which represented the value of labor which would have been necessary for IMC to have corrected the manufacturing defects originally existing in the bows.

The problem with the carrier's first proposition is that the question is not available in this appeal. The trial court

---

1. There was evidence that the carrier had assured IMC it was unnecessary to file a claim.

issued an opinion finding the facts pursuant to Indiana Rules of Procedure, Trial Rule 52. In its opinion the court expressly found that when the carrier undertook to deliver the defective bows to IMC a *new* contract for carriage was entered into.[2] That finding is unchallenged and binding upon the appellant. Accordingly, the delivery to the original consignee on January 21, 1972 is irrelevant. Since no delivery was attempted under the new contract until August 31, 1973, and claim was filed on November 13, 1973, well within nine months after the only attempt to deliver under this contract, no question of reviving a claim is presented.

The argument on appellant's second point consists of one paragraph and contains no citation of authority or attempt to apply authorities to the facts of this case. The issue is therefore waived. AP. 8.3(A)(7). We note, however, that the court found that the shipment, when finally tendered, had virtually no value. This was sustained by evidence that the goods had no value except as scrap and the cost of processing them for scrap would exceed the value then obtainable. *See, Cleveland C. C. & St. L. Ry. Co.* v. *Bement-REA Co.* (1926), 86 Ind. App. 67, 154 N.E.2d 32.

IMC's theory of damages under the circumstances was the value of the goods, including lost profits, since under timely delivery it could have corrected the original defects and perfected its tender to the consignee. Carrier agrees that IMC was entitled to its lost profit. However, in such circumstances a claimant is not entitled to a windfall. The proper measure of damage is the contract price less the amount it would have cost to perform the contract. *Cincinnati, I., St. L. & C. Ry. Co.* v. *Lutes* (1887), 112 Ind. 276, 11 N.E. 784. *Cf.* IC 1971, 26-1-2-708, 713.

It was stipulated that the contract price for the bows was $3,178.50. It is not disputed that the cost of correcting the

2. A similar finding appears in *Schlitten* v. *Hines* (1921), 186 N.Y.S. 831.

original defects so the bows would have been acceptable under IMC's contract with the consignee was $141.12. That amount should have been deducted from the contract price. IMC argues that this is incorrect because at the time the bows were finally tendered to IMC, it was no longer possible for IMC to correct the defects and retender the bows. This argument confuses the significance of the evidence. It was appropriate to establish that had the goods been promptly returned, IMC could have completed performance of its original contract, but that because of the lateness of the attempted delivery this was no longer possible. Such a showing permitted the court to conclude that the proper measure of damages included the profits IMC would have made under the contract. However, because the goods were originally defective their value, including IMC's profit under the contract, was not to be measured simply by the contract price. For as pointed out in *Lutes, supra,* that would provide a windfall to IMC. Once it was determined that the measure of damages properly included lost profit, it was necessary to deduct from the potential profit under the contract the additional amount ($141.12) it would have cost IMC to perform the contract and thus entitled it to "the profit."

The judgment as to the principle is therefore reduced to $3,037.38, and as modified, the judgment is affirmed.

Hoffman and Lowdermilk, JJ. (participating by designation), concur.

NOTE.—Reported at 363 N.E.2d 1078.