**CAPITOL BUILDERS, INC., Appellant (Defendant Below),**

v.

**David L. SHIPLEY Elaina J. Shipley, Appellees (Plaintiffs Below).**

**No. 2–281A65.**

Court of Appeals of Indiana, Second District.

Aug. 31, 1982.

John G. Forbes, Forbes & Pennamped, A Professional Corp., Indianapolis, for appellant.

David A. Clase, Harper & Clase, Indianapolis, for appellees.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Defendant-appellant Capitol Builders, Inc. (Capitol) appeals from a judgment of $10,000 entered in favor of plaintiffs-appellees David L. Shipley and Elaina J. Shipley (the Shipleys) in their action for negligence and breach of warranty in constructing a home, claiming that the trial court erred in instructing the jury, refusing to grant judgment on the evidence in Capitol's favor, admitting certain testimony, and allowing the pre-trial order to be amended. Capitol also alleges that the evidence was insufficient to support the judgment and the damages awarded were excessive.

We affirm.

### FACTS

The evidence most favorable to the judgment discloses that on August 17, 1970, the

Shipleys entered into a contract with Capitol for the construction of a dwelling house at 11607 East Crestwood Court in Indianapolis. The contract specified that Capitol "will do all work in good and workmanlike manner . . . ." *Record* at 162. The total contract price was $20,235.

David Shipley testified as to the process by which he and his wife selected the brick to be installed on their home's exterior. A salesman for Capitol provided the Shipleys with several samples and instructed them to "pick one." *Id.* at 168. They chose a charcoal-colored brick manufactured by Adams Clay and Tile Company (Adams) based solely upon its appearance. David Shipley testified that the salesman made no effort to advise the Shipleys, who were unfamiliar with brick manufacturing methods, as to any differences in quality among the various samples:

Q Mr. Shipley, in selecting—in selecting this brick were—did you have any discussions with the salesman for Capitol about brick?

A None other than the appearance of the brick itself. There was no—no further discussion one way or the other. Just which—he said pick one and then it was said that's number such and such in charcoal—the Adams Clay charcoal. And it was written down on the contract and that was all.

Q And did the salesman give you any guidance with the type of brick that you selected?

. . . .

A None whatsoever. It was just a matter of color and style. There was no indication that there was any difference in quality one way or another.

*Id.* at 168–69.

David Shipley was at the construction site on the day the exterior brick was installed. He testified that bricklayer Maynard L. Houston (Houston) showed him a mortar joint and asked, "How do you like this one?" *Id.* at 224. Shipley responded that he liked its looks. Houston did not display other types of mortar joints. Nor did he explain differences among joints to Shipley, who was uninformed as to various methods of brick installation.

Construction of the Shipleys' home was completed in January, 1971. In April, 1971, the Shipleys observed thin layers breaking from the faces of several of the home's exterior bricks (spalling). The deterioration became widespread and was still occurring when the Shipleys filed suit against Capitol on April 8, 1976.

The Shipleys' complaint alleged negligence and breach of Capitol's warranty to construct the home "in good and workmanlike manner." Damages of $6,000 were requested. A pre-trial order entered after a pre-trial conference also claimed $6,000 damages.

Steven Tiekie (Tiekie) and Edward W. Rodke (Rodke) testified as expert witnesses on behalf of the Shipleys. Tiekie is a masonry contractor who had laid brick, supervised bricklaying, and purchased necessary materials for eighteen years as of the time of trial. Rodke, also a masonry contractor, had selected and laid brick and supervised bricklaying for over thirty years as of the trial date.

Tiekie testified as to the two primary types of brick, hard and soft. Hard brick, he indicated, is "cooked" longer than soft brick. Consequently, hard brick is less porous—and more durable—than soft brick. Because moisture passes readily through soft brick, it tends to "pull the chemicals out of the mortar" by which bricks are joined, thereby inhibiting bonding. *Id.* at 284. So a moisture-proof type of mortar joint, called a tooled joint, must be used with soft brick. The use of a so-called raked joint permits moisture to seep into soft brick. This seepage can ultimately cause the brick to spall, or break off in chips or fragments.

Tiekie testified that he had used brick manufactured by Adams extensively in connection with home construction during 1969 and 1970. He classified Adams brick as a soft brick and indicated that it had a marked tendency to spall. His examination of

the Shipleys' house revealed widespread spalling, caused in his opinion by the use of soft brick in conjunction with a raked joint. David Gray (Gray), president of Capitol, acknowledged that the deterioration of the Shipleys' home was the result of using a raked mortar joint.

Rodke testified that the Shipleys asked him to calculate the cost of repairing the damage to their house. When counsel for the Shipleys asked Rodke to disclose his estimate, counsel for Capitol requested a hearing outside the presence of the jury "[b]ecause my expectation is that the witness will testify that the cost of repair exceeds the dollar prayer in this case which was a part of the pre-trial entry." *Id.* at 324. At the hearing, Capitol's attorney objected to any testimony by Rodke as to repair costs and to any amendment of that portion of the pre-trial order relating to damages. Both objections were overruled. Thereafter, the trial court granted the Shipleys' motion to amend the pre-trial order. Capitol's motion for a continuance was denied. Rodke was permitted to testify that replacement of the exterior brick on the Shipleys' house would cost $10,600.

At the close of the Shipleys' case, Capitol moved for judgment on the evidence on the basis that the applicable statutory period of limitation had expired. The motion was denied.

Before the jury retired, the trial court gave the following instructions over Capitol's objection:

### FINAL INSTRUCTION 9

### GOOD AND WORKMANLIKE MANNER

Good and workmanlike manner is such manner as a reasonably careful and prudent workman possessing the skills of a contractor would perform under the same or similar circumstances.
*Id.* at 95.

### FINAL INSTRUCTION 11

### MEASURE OF DAMAGES

Where the damage to real estate is non-permanent in nature, the measure of damages is the cost of restoration or repair.
*Id.* at 97.

### SUPPLEMENTAL FINAL INSTRUCTION

This is an important case. If you should fail to reach a decision, the case is left open and undecided. Like all cases it must be disposed of at some time. Another trial would be a heavy burden on both sides.

There is no reason to believe that the case can be tried again any better or more exhaustively than it has been. There is no reason to believe that more evidence or clearer evidence would be produced on behalf of either side.

Also, there is no reason to believe that the case would ever be submitted to twelve people more intelligent or more impartial or more reasonable than you. Any future jury must be selected in the same manner that you were.

These matters are mentioned now because some of them may not have been in your thoughts.

This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion so that this case may be completed.

You may be leisurely in your deliberations as the occasion may require and take all the time you feel necessary.

The giving of this instruction at this time in no way means it is more important than any other instruction. On the contrary, you should consider this instruc-

tion together with and as a part of the instructions which I previously gave you.

You may retire and continue your deliberations in such manner as may be determined by your good judgment as reasonable people.

*Id.* at 108.

The trial court refused to give two of Capitol's requested instructions:

### TENDERED FINAL INSTRUCTION 3

If you find from a preponderance of the evidence that the exterior brick in question was not patently or obviously defective, then there was no duty on the part of Capitol Builders, Inc. as user of the product to test or otherwise examine the product for hidden or latent defects.

*Id.* at 57.

### TENDERED FINAL INSTRUCTION 4

It is the law that the user of an article manufactured by another is not liable for damages from latent, hidden or non-obvious defects.

So in this case, if you find from a preponderance of the evidence that Capitol Builders, Inc. was the user of exterior bricks and that said exterior bricks were manufactured by another, then Capitol Builders, Inc. would not be liable to plaintiffs for damages sustained for any latent, hidden or non-obvious defects.

*Id.* at 58.

Capitol tendered the following instruction:

### TENDERED FINAL INSTRUCTION 5

You are instructed that the user of a product has *only* the duty to exercise reasonable care in discovering obvious or patent defects in the product, *and has no duty to test or discover hidden or latent defects.*

So in this case, if you find that Capitol Builders, Inc. exercised reasonable care in examining the exterior bricks for obvious or patent defects, then, *and in that event,*

it would not be liable to plaintiffs herein for negligent selection of said bricks.

*Id.* at 59 (emphasis supplied).

The court modified the requested instruction by deleting the language shown in italics. The abbreviated instruction was given as Final Instruction 10.

### ISSUES

Capitol raises nine issues:

1. Did the trial court err in rejecting Capitol's Tendered Final Instructions 3 and 4 and modifying Tendered Final Instruction 5?

2. Did the trial court err by reading to the jury, over objection, the Supplemental Final Instruction?

3. Did the trial court err by reading to the jury, over objection, Final Instruction 9?

4. Did the trial court err by reading to the jury, over objection, Final Instruction 11?

5. Did the trial court err in refusing to grant judgment on the evidence in Capitol's favor on the basis that the applicable statutory period of limitation had elapsed?

6. Did the court err in allowing Tiekie and Rodke to testify as experts on behalf of the Shipleys?

7. Was the evidence sufficient to support the judgment?

8. Did the trial court abuse its discretion in allowing during trial an amendment of that portion of the pre-trial order relating to damages?

9. Were the damages awarded excessive?

### DECISION

ISSUE ONE—Did the trial court err in rejecting Capitol's Tendered Final Instructions 3 and 4 and modifying Tendered Final Instruction 5, which instructions stated essentially that under no circumstances could Capitol be held liable in tort for damages due to latent defects in the Shipleys' brick?

PARTIES' CONTENTIONS—Capitol argues that a builder cannot be held liable in tort for damages caused by latent defects in building materials. Because evidence showed that the bricks used on the outside of the Shipleys' house had latent defects and no other instructions dealt with the substance of the tendered instructions, the trial court's actions were erroneous. The Shipleys respond that the substance of the tendered instructions was covered by other instructions which were given.

■ CONCLUSION—The trial court did not err in rejecting Capitol's Tendered Final Instructions 3 and 4 and modifying Tendered Final Instruction 5 because the tendered instructions did not correctly state the law as to a builder's tort liability for latent defects in materials.

We find ourselves in a barren wasteland as we consider whether and under what circumstances a contractor may be held liable in tort for the inadequacy of a building due to latent defects in materials. There are no Indiana cases, and we find only one case on point among decisions from other jurisdictions. The court in *Wood-Hopkins Contracting Co. v. Masonry Contractors, Inc.*, (Fla.App.1970) 235 So.2d 548, concluded that a builder could not be held liable on a negligence theory when the insufficiency resulted from "a latent defect in the [exterior] brick not discernible by the exercise of reasonable diligence." *Id.* at 552.

The authors of Annot., 61 A.L.R.3d 792 (1975), have also considered this narrow problem, explaining the basis for the builder's tort liability as follows:

> While ordinarily a breach of contract is not a tort, as a general rule there is implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner, and a negligent failure to

observe any of these conditions is a tort, as well as a breach of contract.

*Id.* at 800 (citing 57 *Am.Jur.* 2d *Negligence* § 47 (1971)).[1]

But, continue the authors, in language similar to that used by the *Wood-Hopkins* court, a contractor is not responsible "where a latent defect in materials was unknown to him and not discoverable in the exercise of ordinary care, and where the materials were purchased from a reputable dealer." 61 A.L.R.3d at 800.

■ Comparison of the law, as expressed by the foregoing authorities, with the text of Capitol's Tendered Final Instructions 3, 4, and 5 reveals that the latter, insofar as they absolutely preclude liability of a builder in tort for latent defects in materials, did not accurately set forth the law on this subject. Under certain circumstances a builder *may* be held liable in tort for latent defects in building materials: A builder may be liable for latent defects discernible by the exercise of reasonable diligence. *Wood-Hopkins, supra*; Annot., 61 A.L.R.3d 792, *supra*. Reversible error may not be predicated upon the trial court's refusal to give a tendered instruction embodying an incorrect statement of the law. *Stowers v. State*, (1977) 266 Ind. 403, 363 N.E.2d 978; *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836; *Smith v. State*, (1980) Ind.App., 403 N.E.2d 869. Thus, the trial court did not err in rejecting Capitol's Tendered Final Instructions 3 and 4. Nor did the court err in modifying Capitol's Tendered Final Instruction 5 by deleting from it the inaccurate statement that Capitol had "no duty to test or discover hidden or latent defects." *See id.*

ISSUE TWO—Did the trial court err by reading to the jury, over objection, the Supplemental Final Instruction, commonly known as an "Allen" charge?

---

1. Indiana courts recognize the general principle that one may be sued in tort for negligently performing or failing to perform a contract. *Flint & Walling Mfg. Co. v. Beckett*, (1906) 167 Ind. 491, 79 N.E. 503; *Staley v. Jameson*, (1874) 46 Ind. 159; *Shriner v. Union Federal Sav. & Loan Assoc.*, (1955) 126 Ind.App. 454, 125 N.E.2d 168. The duty which gives rise to such a tort action is imposed by law, independent of any duty imposed by contract. *French v. Fletcher Trust Co.*, (1938) 105 Ind.App. 221, 12 N.E.2d 386. Our supreme court has specifically said that a contractor employed to build a structure may be held liable in tort for his defective performance. *Theis v. Heuer*, (1972) 264 Ind. 1, 280 N.E.2d 300; *Flint, supra*.

PARTIES' CONTENTIONS—Capitol bases its argument on *Lewis v. State*, (1981) Ind., 424 N.E.2d 107, a criminal appeal in which the Indiana Supreme Court concluded that the giving of an identical instruction, a so-called "Allen" charge, amounted to reversible error; and *Thompson v. Lee*, (1980) Ind.App., 402 N.E.2d 1309, in which this court said that rules governing the propriety of "Allen" charges apply in civil and criminal appeals alike.

The Shipleys contend that the rule prohibiting the delivery of "Allen" charges in criminal cases should have no application in civil cases.

**■ CONCLUSION**—The error, if any, in giving the Supplemental Final Instruction ("Allen" charge) was harmless.

The unadorned holding of *Lewis, supra* is that the delivery of an "Allen" charge as a single instruction which in essence exhorts a deadlocked jury to reach a unanimous verdict is reversible error. The evil to be avoided is pressuring minority jurors to change their votes.

Capitol stresses that the instruction in *Lewis* was identical to the instruction at issue here. But such an assertion ignores a crucial distinction between *Lewis* and this case: The instruction in *Lewis* was read to the jury *after* it had commenced deliberations, while the instruction in this case was delivered *before* the jury retired.[2]

An "Allen" charge is defined in part by our supreme court in *Lewis* as "a *supplemental* charge given by a trial judge to an apparently *deadlocked* jury . . . ." Ind., 424 N.E.2d at 109 (emphasis supplied). This would seem to indicate that the existence of reversible error depends not exclusively upon the content of the charge, but also upon the time at which it is delivered. The sin in giving such a charge to a disagreeing jury lies in creating the erroneous impression that the law requires dissenting jurors to yield to the view of the majority. *See Lewis, supra.*

Indiana decisions since *Lewis* confirm that an "Allen"-type instruction is improper when given as a supplemental charge to a jury which has reported its inability to

---

2. Capitol's claim that the Supplemental Final Instruction was delivered after the jury had commenced deliberations is unsupported by the record. Absent from the trial court's order book entry is any indication that the jury returned to court for additional instructions after the original charge was given:

ENTRY

This cause came on for the third day of trial at 9:00 a. m., on September 18, 1980, the jury having been allowed to separate, said Jury is now present in court and the trial of said cause is now resumed.

Comes [sic] now said parties by counsel ane [sic] evidence is concluded.

Parties by counsel make their closing arguments to the Jury

Parties by counsel having tendered to the court in writing their requested final instructions and the court now enters its rulings on said tendered instructions as follows (H.I.). *And the Court presents its instructions and asking in open court whether or not there are any objections to any of said instructions being given, and said objections being made,* the court makes the following rulings (H.I.).

*The court now gives the following Final Instructions (H.I.) to the jury.*

And now in open court and in the presence of the Jury, the Jury Bailiff, David Byers, is duly sworn to perform his duties as Jury Bailiff in this cause, as provided by law, and *the Jury retires to the Jury Room to deliberate upon the verdict.*

Comes [sic] now the parties in person and by counsel, and *the jury returns in open court and reports that it has reached a verdict which verdict is as follows:*

VERDICT

"We, the Jury, find for the Plaintiffs and against the Defendant, and assess Plaintiffs' damages in the sum of Ten Thousand Dollars ($10,000.00).

/s/ Kevin C. Goetz
Foreman

Dated: 9/18/80"

Parties are asked if they wish to poll the jury and defendant so desiring to poll said jury, the jury is polled. Said jury is now discharged from further service in this cause.

Court is now adjourned.

/s/Betty Barteau
BETTY BARTEAU, JUDGE
MARION SUPERIOR COURT
CIVIL DIVISION, ROOM THREE

DATED: Sept. 30, 1980

*Record* at 115–16 (emphasis supplied). The record further discloses that among Capitol's objections to the court's proposed final instructions—all of which were lodged *before* the jury retired—was one concerning the Supplemental Final Instruction. *Id.* at 502.

agree on a verdict. Twice the supreme court has reversed criminal convictions based on the trial court's delivery of such a charge to an apparently deadlocked jury. *Crowdus v. State*, (1982) Ind., 431 N.E.2d 796; *Burnett v. State*, (1981) Ind., 426 N.E.2d 1314. In both cases, as in *Lewis*, the problem has been characterized as one occasioned by jury deadlock. And in *Indiana State Highway Commission v. Vanderbur*, (1982) Ind.App., 432 N.E.2d 418 (trans. denied), this court overturned a civil judgment because the trial court delivered an "Allen" charge some twelve hours after the jury had retired. Primary reliance was placed upon *Lewis* and *Burnett*, the first district saying that those cases "proscribe the giving of any such instruction at all when it is given for the first time *alone after deliberation has commenced.*" *Id.* at 426 (emphasis supplied).

No Indiana court has proscribed the giving of an "Allen" instruction as part of the trial court's original charge. This is probably so because the risk of promoting coerced verdicts is minimal at this stage of the trial. Furthermore, when an "Allen" charge is included among the original instructions, the possibility of undue emphasis is eliminated.

We are aware that Justice Pivarnik, writing for a unanimous court in *Lewis*, admonished that "to respond to any type of problem occasioned by a jury during its deliberations[,] [t]he proper procedure is for the court to call the jury back into open court in the presence of all the parties and their counsel, if they desire to be there, and to reread all instructions given to them prior to their deliberations, without emphasis on any of them and without further comment." Ind., 424 N.E.2d at 111. Nevertheless, we conclude that under the circumstances of this case, it was not reversible error for the trial court to incorporate the Supplemental Final Instruction as one of the original instructions; and such a conclusion is consistent with the decided cases.

If error occurred, it was at most harmless. It has frequently been said that [w]here it is apparent that the right result has been reached by the jury, and the giving or refusal of a particular instruction did not mislead the jury or prejudice the rights of the parties, no reversible error exists. *David Johnson Co., Inc. v. Basile* (1964), 136 Ind.App. 611, 199 N.E.2d 478; *Supreme Council Catholic Knights of America v. Logsdon* (1915), 183 Ind. 183, 108 N.E. 587.

*Honey Creek Corp. v. WNC Development Co.*, (1975) 165 Ind.App. 141, 150, 331 N.E.2d 452, 458. *Accord, Inland Steel Co. v. Kiessling*, (1915) 183 Ind. 117, 108 N.E. 232; *Evansville & T. H. R. Co. v. Berndt*, (1909) 172 Ind. 697, 88 N.E. 612. In view of the abundance of evidence supporting the judgment, *see* Issue Seven, *infra*, it would be illogical to conclude that the verdict would have differed had the instruction been omitted.

ISSUE THREE—Did the trial court err by reading to the jury, over objection, Final Instruction 9, which defined the contract term "good and workmanlike manner?"

PARTIES' CONTENTIONS—Defining the term "good and workmanlike manner" as "that degree of care which an ordinary prudent person would exercise under the same or similar circumstances," *Appellant's brief* at 44, Capitol argues that Instruction 9 contained an incorrect statement of law. The Shipleys respond that the instruction, which defined the term as "such manner as a reasonably careful and prudent workman possessing the skills of a contractor would perform under the same or similar circumstances," was accurate.

■ CONCLUSION—Instruction 9 correctly defined the contract term "good and workmanlike manner." The instruction was properly given.

This court's decision in *Morris v. Fox*, (1922) 79 Ind.App. 389, 135 N.E. 663, disposes of Capitol's argument. The *Morris* court interpreted a construction contract specifying that the work would be done in a "good, substantial, workmanlike manner." The quoted phrase was defined as follows:

The term thus used by the parties has a fixed meaning in the building trade. *To do the work in the building of a house in*

*a good, workmanlike manner is to do the work as a skilled workman would do it.* Fitzgerald v. LaPorte, 64 Ark. 34, 40 S.W. 261.

*Id.* at 392, 135 N.E. at 664 (emphasis supplied).

This definition is virtually identical to the one in Instruction 9, that is, "such manner as a reasonably careful and prudent workman possessing the skills of a contractor would perform under the same or similar circumstances." No incorrect statement of law was made and no error occurred. *See Stowers, supra; Davis, supra; Smith, supra.*

ISSUE FOUR—Did the trial court err by reading to the jury, over objection, Final Instruction 11, which stated that the measure of damages for tortious non-permanent injury to realty is the cost of restoration or repair?

PARTIES' CONTENTIONS—Capitol characterizes the Shipleys' loss as permanent. Thus, Instruction 11, which set forth the measure of damages for tortious *non-permanent* injury to real property, was unsupported by the evidence. The Shipleys counter that their loss was non-permanent, so the instruction was properly given.

■ CONCLUSION—The Shipleys' loss was non-permanent. The court did not err in delivering Instruction 11, which correctly stated the measure of damages for tortious non-permanent injury to real property.

■ "Permanent" injury to tortiously damaged real property occurs when "the cost of restoration exceeds the market value of the building prior to injury." *General Outdoor Advertising Co. v. LaSalle Realty Corp.,* (1966) 141 Ind.App. 247, 267, 218 N.E.2d 141, 151. So an injury may be classified as "non-permanent" when the cost of restoration is less than the pre-loss market value of the structure.

Here, the total contract price was $20,235 and the estimated restoration cost was $10,600. Even without taking inflation into account, the Shipleys' loss falls outside *General Outdoor's* definition of permanent injury. And it is beyond dispute that the meas-

ure of damages for tortious non-permanant injury to real property is the cost of restoration. *General Outdoor, supra. Accord, Bottoms v. B & M Coal Corp.,* (1980) Ind. App., 405 N.E.2d 82; *Smith v. Glesing,* (1969) 145 Ind.App. 11, 248 N.E.2d 366. Instruction 11 having correctly stated the law and being supported by evidence in the record, was properly given. *See Stowers, supra; Davis, supra; Smith, supra.*

ISSUE FIVE—Did the trial court err in refusing to grant judgment on the evidence in Capitol's favor on the basis that the applicable statutory period of limitation had elapsed?

PARTIES' CONTENTIONS—Capitol emphasizes that the Shipleys' complaint alleged negligence in *selecting* the brick used on the exterior of their home. Because the brick was personal property when selected in 1971, IC 34–1–2–2, which provides a two-year period of limitation for injuries to personal property, applies to bar the Shipleys' action, which was filed in 1976. The Shipleys respond that their action falls within IC 34–4–20–2, a ten-year limitation statute covering actions for construction deficiencies. As construction was completed in 1971, their action is not barred.

■ CONCLUSION—The ten-year period of limitation prescribed by IC 34–4–20–2 (covering actions for construction deficiencies) governs this action. Thus, the trial court did not err in refusing to grant judgment on the evidence in Capitol's favor on the basis that the applicable statutory period of limitation had elapsed.

■ In reviewing the trial court's ruling on a motion for judgment on the evidence, this court must consider only the evidence and reasonable inferences most favorable to the non-moving party. *Large v. Gregory,* (1981) Ind.App., 417 N.E.2d 1160; *Killebrew v. Johnson,* (1980) Ind.App., 404 N.E.2d 1194. Judgment on the evidence in favor of the defendant is proper when there is an absence of evidence or reasonable inferences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference

which is in favor of the defendant. *Large, supra; Arnold v. Parry,* (1977) 173 Ind.App. 300, 363 N.E.2d 1055. If there is any probative evidence or reasonable inference to be drawn from the evidence, or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

With these rules in mind, we turn to the applicable statute of limitations in this case, examining first Capitol's argument that the two-year limitation statute for injury to personal property is controlling.

Capitol mistakenly relies upon *Adcor Realty Corp. v. Mellon-Stuart Co.,* (N.D.Ohio 1978) 450 F.Supp. 769. The plaintiffs in *Adcor,* owners of a building whose exterior bricks had deteriorated, brought a products liability action against the brick manufacturer. The federal district court, applying Ohio law, *rejected* the manufacturer's argument that the statute of limitations for injury to personal property governed the action. The court acknowledged that "the bricks in issue were personalty until such time as they were incorporated into the building." *Id.* at 770. But once the bricks were "permanently incorporated into the building itself, [they] became affixed to realty and [were] therefore real property." *Id.* (citations omitted). As the gist of the action was for injury to real property, the pertinent statute of limitations applied.

The Shipleys' complaint alleges negligence and breach of warranty in selecting *and installing* the bricks used on the exterior of their home, bricks which were incorporated into the structure. And the essence of their action, like the action in *Adcor,* is for injury to real property. It follows that IC 34–1–2–2, the two-year statute of limitations covering injury to personal property, is inapplicable.

We agree with the Shipleys that IC 34–4–20–2, covering actions against a contractor for defective work, is the controlling statute of limitations. It provides as follows:

Ten-year limitation for deficiency in construction of improvements.—*No action to recover damages whether based upon contract, tort,* nuisance, or otherwise,

(a) *For any deficiency, or alleged deficiency, in the design, planning, supervision, construction* or observation of construction, *of an improvement to real property,* or

(b) For an injury to property, either real or personal, arising out of any such deficiency, or

(c) For injury to the person, or for wrongful death, arising out of any such deficiency, *shall be brought against any person performing or furnishing the design, planning, supervision, construction,* or observation of construction, of an improvement to real property, *unless such action is commenced within ten [10] years from the date of substantial completion* of such improvement.

(Emphasis supplied).

The statutory language is broad enough to encompass the Shipleys' action. *See, e.g., Walsh v. Halteman,* (1980) Ind.App., 403 N.E.2d 894 (IC 34–4–20–2 applied to suit against builder for defective construction of house).

Construction of the Shipleys' home was completed in 1971 and suit was filed in 1976, some four years before the ten-year period of limitation had elapsed. The trial court did not err in refusing to grant judgment on the evidence for Capitol.

ISSUE SIX—Did the trial court err in allowing Tiekie and Rodke to testify as experts on behalf of the Shipleys?

PARTIES' CONTENTIONS—Capitol asserts that the court abused its discretion in permitting Tiekie and Rodke to testify because neither was qualified to give an opinion as an expert. The Shipleys answer that both witnesses were competent to testify as experts in the bricklaying trade.

 CONCLUSION—The trial court did not err in allowing Tiekie and Rodke to testify as experts.

The function of an expert witness is to draw inferences from the facts which a jury would not be competent to draw. *Davis v. Schneider,* (1979) Ind.App., 395 N.E.2d 283. Two elements must be established to qualify a witness as an expert:

1) the subject of the inference must be so distinctly related to some science, profession, business or occupation as to be beyond the ken of laymen; and 2) the witness must have sufficient skill, knowledge or experience in that field as to make it appear that his opinion or inference will probably aid the trier in his search for the truth. *See* 13 I.L.E. *Evidence* § 294 (1959); *Smith v. Uniroyal, Inc.*, 420 F.2d 438 (7th Cir. 1970).

*Id.* at 290. *Accord, State v. Maudlin*, (1981) Ind.App., 416 N.E.2d 477.

Whether a witness is qualified to testify as an expert is a matter within the sound discretion of the trial court. The trial court's decision will not be set aside absent a manifest abuse of discretion. *King v. State*, (1979) Ind.App., 397 N.E.2d 1260. *See also Davis, supra.*

Tiekie, a masonry contractor for eighteen years, had used brick manufactured by Adams frequently during the pertinent period. He described the phenomenon of spalling and the tendency of Adams brick to spall. He gave his opinion as to the cause of the widespread spalling he observed when he examined the Shipleys' house. Rodke, a masonry contractor for over thirty years, gave his opinion as to the cost of repairing the damage to the Shipleys' house. Clearly, Tiekie and Rodke, having been engaged in the bricklaying trade for a combined total of nearly fifty years, were qualified to give their opinions as to matters arising in the course of that trade. *See Maudlin, supra; Davis, supra.* The trial court did not err in permitting their testimony.

ISSUE SEVEN—Was the evidence sufficient to support the judgment?

PARTIES' CONTENTIONS—Capitol presents a hodgepodge of arguments under the heading of sufficiency. Claiming first that the evidence shows the Shipleys selected the brick and the method of its installation "independent[ly] of and free from any representation of Capitol Builders," *appellant's brief* at 51, Capitol insists that it cannot now be held responsible for their misjudgment. Capitol next argues that even if it did select the brick or type of mortar joint or both, the Shipleys offered insufficient proof that Capitol's actions in selecting and installing the brick were the proximate cause of their damages. Finally, Capitol offers the bare argument that "there was no evidence adduced at trial demonstrating a breach of alleged duty." *Id.* at 55. The Shipleys respond that there was ample evidence to support the judgment.

CONCLUSION—The evidence was sufficient to support the judgment.

In reviewing the sufficiency of the evidence in a civil case, the question to be resolved is whether there is substantial evidence of probative value supporting the trial court's judgment. *City of Indianapolis v. Parker*, (1981) Ind.App., 427 N.E.2d 456. This court will neither weigh the evidence nor judge the credibility of witnesses. *Id.; Cole Real Estate Corp. v. Peoples Bank & Trust Co.*, (1974) 160 Ind.App. 88, 310 N.E.2d 275. We will consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. *Id.* Only if there is a lack of evidence or evidence from which a reasonable inference can be drawn on an essential element of the plaintiff's claim must there be a reversal. *Parker, supra.*

Capitol retries its case on appeal. Its argument that the Shipleys independently chose the brick and type of mortar joint to be used on their home's exterior simply ignores evidence by David Shipley favorable to the judgment.

Capitol's argument that the evidence was insufficient to show its actions were the proximate cause of the Shipleys' damages is likewise without foundation. Proximate cause is an essential element of a cause of action for negligence. *E.g., Celanese Coating Co. v. Blakemore*, (1975) 163 Ind.App. 433, 324 N.E.2d 268. This court has defined proximate cause as

"that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Johnson*

*v. Bender*, (1977) Ind.App., 369 N.E.2d 936, 939 . . . . . . *A fundamental element of proximate cause is that the injury or consequence of the wrongful act be of a class reasonably foreseeable at the time of that act.* *Elder v. Fisher*, (1966) 247 Ind. 598, 217 N.E.2d 847; *Meadowlark Farms, Inc. v. Warken* [Ind.App., 376 N.E.2d 122] *supra.*

*Ortho Pharmaceutical Corp. v. Chapman*, (1979) Ind.App., 388 N.E.2d 541, 555 (emphasis supplied).

 There was direct evidence that the spalling was a reasonably foreseeable consequence of Capitol's improperly selecting or installing the facing brick. This was sufficient evidence of proximate cause.

 Capitol's meager final argument that the evidence was insufficient to show a breach of duty owed the Shipleys makes virtually no attempt to show how the facts of the case relate to the argument. It is waived. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). *See also Midwest Emery Freight System, Inc. v. IMC, Inc.*, (1977) 173 Ind.App. 368, 363 N.E.2d 1078.

ISSUE EIGHT—Did the trial court abuse its discretion in allowing during trial an amendment of that portion of the pre-trial order relating to damages?

PARTIES' CONTENTIONS—Capitol argues that the amendment was precluded by *Bahre v. Metropolitan School District*, (1980) Ind.App., 400 N.E.2d 197. The *Bahre* court established a prerequisite to granting a T.R. 15(B) motion to amend the pleadings to conform to evidence introduced without objection in certain cases:

> While this court is in full accord with those cases permitting a liberal interpretation of T.R. 15(B) which allow [sic] the pleadings to be amended to conform to the evidence presented at trial under an implied consent concept, we also believe that this basic precept notwithstanding, *the opposing party must have the benefit of some type of notice as to what additional theories of recovery are being litigated when such a change from the pleadings is not readily apparent from*

> *the scope of the evidence presented at the trial.*

*Id.* at 200 (emphasis supplied).

Capitol apparently characterizes the amendment as a T.R. 15(B) amendment to conform, and would have us conclude that the amendment, based on Rodke's estimate of repair costs, encompassed an "additional theory of recovery." Because Capitol had no prior notice of the "theory," the amendment should not have been permitted. Capitol further claims, without citing to pertinent portions of the record, that Rodke made his estimate in 1977, some two years before the pre-trial conference was held. Thus, the evidence as to enhanced repair costs was within the Shipleys' knowledge at the time of the conference. Had Capitol been informed of the evidence then, it would have "prepared defenses . . . and called in experts to rebut the damages" at trial. *Appellant's brief* at 48.

The Shipleys respond that the amendment was properly allowed because it did not surprise or prejudice Capitol.

 CONCLUSION—The trial court did not abuse its discretion in allowing during trial an amendment of that portion of the pre-trial order relating to damages.

Indiana courts recognize the binding effect of the pre-trial order:

> A pre-trial order delineates the issues in the case and supplants the allegations raised in the pleadings. All subsequent pleadings are then controlled by this pre-trial order. *Dominguez v. Gallmeyer*, (1980) Ind.App., 402 N.E.2d 1295.

*Lewis v. Davis*, (1980) Ind.App., 410 N.E.2d 1363, 1366. *Accord, Marotta v. Iroquois Realty Co.*, (1980) Ind.App., 412 N.E.2d 797.

 T.R. 16(J), covering the pre-trial order, acknowledges this general rule, but explicitly provides that the pre-trial order may be modified "to prevent manifest injustice." Whether to permit the pre-trial order to be amended is a matter within the trial court's discretion. This court will not interfere absent a showing of abuse of discretion. *Lewis, supra; Colonial Mortgage Co. v. Windmiller*, (1978) Ind.App., 376

N.E.2d 529. In deciding whether to permit an amendment, the trial court should consider the danger of surprise or prejudice to the opposing party and the goal of doing justice to the merits of the claim. 6 *C. Wright & A. Miller, Federal Practice and Procedure* § 1527, at 611 (1971) (citations omitted) [hereinafter cited as 6 *Federal Practice*]. *See also Windmiller, supra.*

The simple answer to Capitol's argument based upon *Bahre, supra*, is that the Shipleys' amendment did *not* embrace "additional theories of recovery." *Bahre, supra*, 400 N.E.2d at 200. Its purpose was to permit the introduction of new evidence concerning an issue originally raised in the pre-trial order.

Because we conclude that *Bahre* is distinguishable on the aforementioned basis, we need not reach the question whether *Bahre* may be further distinguished for the reason that it involved a T.R. 15(B) amendment of the pleadings to conform to evidence introduced without objection rather than a T.R. 16(J) amendment of the pre-trial order over objection.

Turning to the question whether an abuse of discretion occurred, it is true that the trial court may refuse to permit a pre-trial order to be amended to include evidence of which the party seeking modification was aware at the pre-trial conference. *E.g., McKey v. Fairbairn*, (D.C.Cir.1965) 345 F.2d 739. But Capitol fails to refer to any portion of the record supportive of its claim that the Shipleys had obtained the higher estimate of repair costs before the pre-trial conference was held. This court will not search the record to reverse. *Clemans Trucklines, Inc. v. Vaughn*, (1966) 139 Ind. App. 404, 213 N.E.2d 470. The argument is waived. A.R. 8.3(A)(7).

Moreover, it is unlikely that Capitol was surprised by Rodke's testimony: Counsel for Capitol requested a hearing outside the presence of the jury "[b]ecause my expectation is that the witness will testify that the cost of repair exceeds the dollar prayer in this case which was a part of the pre-trial entry" *before* the Shipleys moved to amend the pre-trial order and Rodke disclosed his estimate. *Record* at 324. Nor are we persuaded that Capitol was unduly prejudiced by the amendment. Capitol does not deny that it had ample opportunity to take Rodke's deposition before trial and to cross-examine him at trial concerning his estimate of the Shipleys' damages. The amendment was properly permitted. *See* 6 *Federal Practice, supra; Windmiller, supra.*

ISSUE NINE—Were the damages awarded excessive?

PARTIES' CONTENTIONS—Capitol insists that the verdict of $10,000 lacked an evidentiary basis. The Shipleys respond that the award was supported by the evidence.

■ CONCLUSION—The damages awarded were not excessive.

This court's standard in reviewing a claim of excessive damages is clear:

> In order to justify a reversal on grounds of excessive damages, the amount of damages assessed must appear to be so outrageous as to impress the court as being motivated by passion, prejudice and partiality. [Citations omitted.]
>
> *Reversal is not justified*, however, *if the amount of damages awarded is within the scope of the evidence before the court. Northern Indiana Public Service Co. v. Otis*, [145 Ind.App. 159, 250 N.E.2d 378] *supra; First Bank & Trust Co. of South Bend v. Tellson* (1954), 124 Ind.App. 478, 118 N.E.2d 496.

*State v. Thompson*, (1979) Ind.App., 385 N.E.2d 198, 214–15 (emphasis supplied). *See also New York Central Railroad Co. v. Johnson*, (1955) 234 Ind. 457, 127 N.E.2d 603; *City of Indianapolis v. Ervin*, (1980) Ind.App., 405 N.E.2d 55; *Ingmire v. Butts*, (1975) 166 Ind.App. 139, 334 N.E.2d 701.

Rodke testified that replacement of the exterior brick on the Shipleys' house would cost $10,600. The $10,000 award was supported by the evidence.

The judgment of the trial court is affirmed.

SHIELDS and SULLIVAN, JJ., concur.