MAURICE INGMIRE AND BRUCE VANCAUWENBERGH *v.* CECIL BUTTS AND DONIS BUTTS.

[No. 2-1172A111. Filed September 25, 1975.]

*Arvin R. Foland,* of Noblesville, for appellants.

*David M. Adams, Castor, Richards & Adams,* of Noblesville, for appellees.

## CASE SUMMARY

BUCHANAN, J.—Defendant-Appellants Maurice Ingmire and Bruce VanCauwenbergh (Lessees) appeal from a trial court judgment for damages and ejectment arising out of their occupancy of real estate owned by Plaintiff-Appellees Cecil Butts and Donis Butts (Lessors), maintaining that the damages awarded to Lessors were excessive, erroneous exclusion of certain parol evidence, and failure to follow Rule TR. 53 in the appointment and functioning of the Master Commissioner.

We affirm.

## CASE HISTORY

When this case was originally considered on June 27, 1974, it was determined that the Lessees pursued an appeal to this court without a final judgment having been rendered by one with judicial power and authority to do so. *Ingmire* v. *Butts* (1974), 160 Ind. App. 575, 312 N.E.2d 885.

Accordingly, we suspended consideration of the Lessees' appeal and instructed "the Hamilton County Circuit Court to order the filing of a Master Commissioner's Report by the

Commissioner and to enter final judgment in accordance with provisions of Rule TR. 53 . . .". *Id.* at p. 890.

In compliance, the Master Commissioner submitted his report on September 20, 1974, which the trial court adopted the same day as its final judgment.

Lessees now appeal from this judgment.

## FACTS

The record, when viewed most favorably to Lessors as Appellees and the judgment of the trial court, reveals the following facts:

On April 3, 1963, Defendant-Appellants Ingmire and Van Cauwenbergh (Lessees) entered into a three-year lease of the subject property owned by Plaintiff-Appellees Cecil and Donis Butts (Lessors).

Under the lease, Lessees agreed that they would not "make any alterations, amendments or additions to the buildings on said premises, without the written assent" of the Lessors. However, a typewritten addendum provided that "Lessee may erect additional storage facilities, *not attached to the building* * * *."* (Emphasis supplied).

The leased premises consisted of a single story cement block building, 50 feet by 60 feet, covered with a clear span roof. Lessors had used the building as a garage and hardware store prior to 1963. In 1949, Lessors installed steel columns under one of the trusses which served to support the lower beam whenever an engine hoist was used. Nothing else was attached to the trusses and Lessors encountered no problems with the roof leaking.

When the Lessees took possession, they used the premises for a motorcycle shop.

In 1965 a windstorm caused minor damage to the roof (installed in 1954 or 1955), which damage was repaired by

replacing 20 board feet of roof sheeting. After this repair, the roof did not leak.

Renewals of the lease were made in 1966 and 1968, the last renewal ending April 30, 1973.

In 1969 and 1970, Lessees constructed an additional storage floor in the building. This storage floor was of wooden construction, nailed to and suspended from the trusses, and covered about two-thirds of the building. The addition was used for storing heavy motorcycle parts, frames, etc. The trusses were equipped with turnbuckles which could be used to adjust and equalize the load imposed on the trusses by the new construction.

Contemporaneously with the installation of the "second floor," the roof of the building began to leak. Lessors and their witnesses attributed the leakage to the effect of the weight of the added construction and parts therein. The downward force of this additional weight, they testified, caused distortion of the trusses. As the trusses bent, they pulled away from the roof, causing nails to pull through the roof and the entire roof to sag. This damage to the roof was the source of the leakage problem.

On the other hand, Lessees' expert witness stated that the steel columns added by Lessors twenty years previously had overstressed the trusses. He admitted, however, that he had not considered the extra load added by the parts room in making his calculations. Lessees testified that Lessors had orally agreed to fix the leaking roof in return for Lessees' promise to install an acoustic ceiling in a portion of the building. Lessors denied making any sort of agreement to fix the roof.

There was evidence that Lessees damaged the premises in other respects. For example, Lessees allowed pipes in a ladies' restroom to freeze, which caused them to burst. Thereafter some of the plumbing was torn out, fixtures damaged or re-

moved, the door was boarded over and the restroom was used for a dog house.

In September of 1970, Lessees stopped making rent payments. On August 19, 1971, Lessors responded by filing a complaint in Hamilton Circuit Court, seeking rent and damages. Lessees continued to withhold their rent, and a second suit was filed on January 25, 1972 asking for immediate possession. Lessors posted bond and a Writ of Ejectment was issued. At this time Lessees were fourteen months in arrears in their rent payments.

On February 9, 1972, Lessees stipulated that they would pay the back rent and keep the rent current. Lessors in turn agreed to request the Sheriff not to execute the Writ until further notice, pending trial of the issues. However, the Lessees subsequently became Two Hundred Forty Dollars ($240.00) in arrears and failed to pay the May, 1972, rent on time.

The two suits were consolidated for trial. The Master Commissioner of the Hamilton Circuit Court, who had been appointed on January 3, 1972, by the Hamilton County Circuit Court Judge, heard the evidence apparently with the acquiescence of both parties as no objection was filed.

On September 20, 1972, the Master Commissioner submitted his report, which the trial court adopted as its final Judgment on the same day. The judgment awarded damages in the amount of Three Thousand Four Hundred Ten Dollars ($3,410.00) to Lessors and directed that the Writ of Ejectment should be executed.

The trial court did stay execution of the ejectment, provided Lessees pay the damages within twenty-one (21) days of the judgment. Subsequently, the court again stayed execution of the Writ pending appeal, so that Lessees enjoyed possession of the premises for the full term of the lease as extended, i.e. to April 30, 1973.

## ISSUES

In alleging and arguing error in granting ejectment, Lessees raise certain issues as to ejectment claiming estoppel and waiver of re-entry. Inasmuch as Lessees remained in possession for the full term of the extended lease, issues relating to ejectment or forfeiture have long since become moot and therefore will not be treated.[1]

Remaining for determination are these issues:

ISSUE ONE:     Were the damages awarded excessive?

ISSUE TWO:     Did the court erroneously refuse to admit evidence of a parol agreement to repair the roof?

ISSUE THREE:   Did the appointment of the Master Commissioner and his subsequent actions comply with TR. 53?

As to ISSUE ONE, Lessees challenge the award of damages as "excessive" because the weight of evidence did not support the award.

Lessors reply that the testimony amply supported the trial court's assessment of damages and Lessees simply seek a reweighing of the evidence.

As to ISSUE TWO, Lessees argue that the trial court erred in not allowing Lessees to testify as to an alleged parol agree-

---

1. If there is no question of general public interest and no issue in dispute between the parties on which the court could grant relief by any judgment it might render, the case must be treated as moot. *I.H.S.A.A. v. Raike* (1975), Ind. App., 329 N.E.2d 66, 71, n. 3; *Modlin* v. *Board of Commissioners of Grant County* (1913), 55 Ind. App. 239, 103 N.E. 506; *Wallace* v. *City of Indianapolis* (1872), 40 Ind. 287.

Lessees' possessory interest in the real estate terminated without their having suffered an ejection. They have no present interest in the property and our reversal of the trial court on the issue of ejectment would be unavailing. "Judgments in possessory actions will not be rendered when they would be unavailing." *Bryson* v. *Barrett* (1920), 108 Kan. 71, 93 P. 1063. *Haas* v. *Rathburn* (1965), 137 Ind. App. 172, 205 N.E.2d 329, 206 N.E.2d 389; *Showers* v. *Goodman* (1918), 67 Ind. App. 352, 119 N.E. 219; *Cf.*, *Goodson* v. *Board of Trustees of Y.M.C.A. of Vincennes* (1969), 145 Ind. App. 561, 251 N.E.2d 852.

ment entered into whereby Lessors would repair the roof in exchange for Lessees' installation of a suspended ceiling.

Lessors respond that Lessees' Motion to Correct Errors did not raise this issue with sufficient specificity to preserve it on appeal, contrary to Rule TR. 59(G).

As to ISSUE THREE, Lessees contend that the trial court's appointment of the Master Commissioner and his subsequent actions did not comply with TR. 53.

Lessors answer that the appointment of the Master Commissioner and the proceedings pursuant to this appointment were in substantial compliance with TR. 53.

## DECISION

ISSUE ONE

CONCLUSION—It is our opinion that the award of damages in the amount of Three Thousand Four Hundred Ten Dollars ($3,410.00) was not excessive.

While Lessees' issue of excessiveness comes perilously close to being waived for failure to make cogent argument or cite applicable authority,[2] we will briefly consider the merits of this question.

In order to justify a reversal on the ground of excessive damages, the amount of damages assessed must appear to be so outrageous as to impress the court as being motivated by passion, prejudice, and partiality. *New York Central Railroad Co.* v. *Johnson* (1955), 234 Ind. 457, 127 N.E.2d 603; *Northern Indiana Public Service Co.* v. *Otis* (1969), 145 Ind. App. 159, 250 N.E.2d 378; *City of Evansville* v. *Rinehart* (1968), 142 Ind. App. 164, 233

2. *See, Loeb* v. *Loeb* (1973), 261 Ind. 96, 301 N.E.2d 349, 358; *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805, 807; *Miller* v. *State* (1971), 256 Ind. 296, 268 N.E.2d 299; *Beech* v. *State* (1974), 162 Ind. App. 287, 319 N.E.2d 678, 681-682; *Maynard* v. *State* (1973), 157 Ind. App. 573, 301 N.E.2d 200, 203-204; Rule A.P. 8.3(A)(7).

N.E.2d 495; *Hines* v. *Nichols* (1921), 76 Ind. App. 445, 130 N.E. 140.

Reversal is not justified, however, if the amount of damages awarded is within the scope of the evidence before the court. *Northern Indiana Public Service Co.* v. *Otis, supra; First Bank & Trust Co. of South Bend* v. *Tellson* (1954), 124 Ind. App. 478, 118 N.E.2d 496.

Lessors testified that the replacement of the roof would cost Ten Thousand Dollars ($10,000.00). Included in this figure were the sheeting and roofing materials, labor to remove the old roof, and labor to install the new roof. Lessors' witness Virgil Lee Butts testified that the lowest estimate he had received for the same work was around Five Thousand Dollars ($5,000.00) or Six Thousand Dollars ($6,000.00).

Lessees suggest that the court abused its discretion by not accepting their expert's estimate of Two Hundred Dollars ($200.00) for repairs. A careful reading of the record reveals that the Two Hundred Dollar ($200.00) figure was the estimate for repairing the damage and distortion in two of the four trusses, and did not include repairs to the roof itself.

Lessors' witness Virgil Lee Butts also testified that the usual life span of a roof is fifty (50) years, assuming that the shingles are replaced when necessary. The roof of the leased premises was installed in 1954 or 1955; it was therefore about 15 years old at the time it was damaged.

Three Thousand Four Hundred Ten Dollars ($3,410.00) would seem to be a reasonable assessment of damages for the replacement of (or extensive repairs to) a 15-year old roof.

As the damages awarded are well within the scope of the evidence as to repair or replacement of the roof, we cannot conclude that they are so outrageous as to have been motivated by passion, prejudice, or partiality.

ISSUE TWO

CONCLUSION—It is our opinion that any error as to the refusal of the trial court to admit a parol agreement to repair the roof has been waived by failure to include such error in the Lessees' Motion to Correct Errors.

The Indiana Rules of Procedure elevates the Motion to Correct Errors to an exalted position. It is a condition to an appeal. Rule TR. 59(G) provides that "Issues which could be raised upon a Motion to Correct Errors may be considered upon appeal only when included in the motion to correct errors filed with the trial court. * * *."

"The statement of claimed errors *shall be specific* rather than general, and shall be accompanied by a statement of the facts and grounds upon which the errors are based." (our emphasis.) TR. 59(B)

Lessees' Motion to Correct Errors only makes a fleeting and oblique reference to a trial court ruling that "would not admit testimony concerning the consideration and promises for the doing of these improvements which would have shown that the improvements were made with the understanding that the roof was to be fixed, . . .".

Such a vague reference hardly constitutes a *specific* challenge of error to the parol evidence rule . . . and therefore amounts to a waiver. TR. 59(B), (G). *Bennett* v. *State* (1973), 159 Ind. App. 59, 304 N.E.2d 827; *Spivey* v. *State* (1971), 257 Ind. 257, 274 N.E.2d 227; *Matthew* v. *State* (1972), 154 Ind. App. 182, 289 N.E.2d 336; *Weingart* v. *State* (1973), 157 Ind. App. 597, 301 N.E.2d 222; *State* v. *Hladik* (1973), 158 Ind. App. 223, 302 N.E.2d 544; *Daben Realty Co., Inc.* v. *Stewart* (1972), 155 Ind. App. 39, 290 N.E.2d 809; *Ind. Dept. of State Revenue* v. *Frank Purcell Walnut Lumber Co., Inc.* (1972), 152 Ind. App. 122, 282 N.E.2d 336; *Farley* v. *Farley* (1973), 157 Ind. App. 385, 300 N.E.2d 375; *Ostric* v. *St.*

*Mary's College* (1972), 153 Ind. App. 616, 288 N.E.2d 565; *See also, Leventhal Auto Co.* v. *Munns* (1975), 164 Ind. App. 368, 328 N.E.2d 734; *Haskett* v. *Haskett* (1975), 164 Ind. App. 105, 327 N.E.2d 612; *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160.

Curiously the trial court did in fact admit evidence of the alleged oral agreement.[3]

No error can flower in such barren soil.

ISSUE THREE

CONCLUSION—It is our opinion that the trial court's order of reference appointing the "Master Commissioner"[4] and his subsequent actions in this case were in compliance with Rule TR. 53.

Apparently, the trial court assumed that the Master Commissioner Statute, Acts 1881 (Spec. Sess.), Ch. 38, §§ 412, 415, and 418 and amendments thereto, was still in effect on January 1, 1972 because on January 3, 1972 it entered this order:

> BE IT REMEMBERED, that among and as a part of the record of the Circuit Court, Hamilton County, State of Indiana, is the following docket entry and order:
>
> Effective January 1, 1972 and until further order of Court, the following officers for the Hamilton Circuit Court are now designated; Kenton S. Hershey, Bailiff, Probate Commissioner, Adult Probation Officer; Juvenile Probation Officer; Eve M. New, Official Court Reporter; Frances Stubbs, Trial Docket Clerk and Special Court Reporter; Frank Stevenson, Pauper Attorney and *John S. Pearce, Commissioner of Circuit Court.* (our emphasis).
>
> /S/
> _____
> EDWARD F. NEW, Jr. JUDGE
> CIRCUIT COURT OF HAMILTON COUNTY
> STATE OF INDIANA

3. Transcript, p. 199.

4. Rule TR. 53(A) defines the word "Master" to include "without limitation an attorney, a referee, an auditor, an examiner, a *commissioner*, and an assessor." (our emphasis) Consequently, our reference to Master Commissioner is equated with the term "master" as used in the rule.

And, on November 22, 1972, the trial court certified that John S. Pearce acted as Master Commissioner in this cause:

STATE OF INDIANA

COUNTY OF HAMILTON

I, HON. EDWARD F. NEW, Jr. hereby Certify that John S. Pearce was the duly appointed and acting Master Commissioner of Hamilton Circuit Court at all times during the hearing of the evidence etc. of Cause No. C72-028. IN WITNESS WHEREOF I set my hand this 22nd day of November, 1972.

/S/ _____

EDWARD F. NEW, Jr. JUDGE
CIRCUIT COURT OF HAMILTON COUNTY
STATE OF INDIANA

However, the Legislature specifically repealed the Master Commissioner Statute effective January 1, 1970, (Acts 1969, Ch. 191).

Since that time Rule TR. 53 controls Masters. Sub-section (C) of the rule provides:

(C) *Powers.* The order of reference to the master may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master's report. Subject to the specifications and limitations stated in the order, the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order. He may require the production before him of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. He may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may himself examine them and may call the parties to the action and examine them upon oath. When a party so requests, the master shall make a record of the evidence offered and excluded in

the same manner and subject to the same limitations as provided in Rule 43 (C) for a court sitting without a jury.

The order of reference (read with the certificate) referred to above is not as specific as it might be, but our examination of the entire record indicates that the Master Commissioner operated within the limits of the rule. The order is not fatally defective because it did not specifically define or limit his powers. Any error occasioned by lack of specificity of the order is harmless. Rule TR. 61.

Moreover, the parties agreed prior to trial to refer this case to a Master Commissioner . . . and such agreement is sanctioned by TR. 53 (B).[5] The Lessees by agreeing to reference of the matter to a Commissioner cannot now be heard to complain.

Another string to Lessees' bow is that even had the Master been properly appointed he exceeded his authority "by rendering conclusions of law."

The Master Commissioner did prepare a report of the proceedings as required by TR. 53 (E) (1) :[6]

## REPORT OF MASTER COMMISSIONER

This cause, having been submitted to the Court, without intervention of a jury, and the evidence having been heard by the Master Commissioner; the Master Commissioner now makes the following *findings* and *recommendations* to the Court;

---

5.  Rule TR. 53(B) provides: ". . . Reference shall be allowed when the parties agree prior to trial as provided by these rules or by statute."

6.  "(E) *Report.*

(1) Contents and filing. The master shall prepare a report upon the matters submitted to him by the order of reference and, if required by request of any party or the court prior to hearing or the taking of evidence by him to make findings of fact, he shall set them forth in the report. He shall file the report with the clerk of the court and in an action to be tried without a jury, unless otherwise directed by the order of reference, shall file with it a transcript of the proceedings and of the evidence and the original exhibits. The clerk shall forthwith mail to all parties notice of the filing."

Upon the hearing of all evidence, the Master Commissioner *recommends* that the Court find for the plaintiffs on their Complaint for Immediate Possession and finds that the Sheriff of Hamilton County should be ordered by the Judge of this Court to eject said defendants forthwith.

The Master Commissioner further *finds* that there is due the plaintiffs from the defendants the sum of Three thousand four hundred ten dollars ($3,410.00).

The Master Commissioner further *recommends* that the ejectment heretofore mentioned should be stayed provided the sum of Three thousand four hundred ten dollars ($3,-410.00) is paid within twenty-one (21) days.

The Master Commissioner further *recommends* that if said sum is not paid within this period of time, that the plaintiffs are entitled to the immediate possession and the Sheriff of Hamilton County should be ordered to eject the said defendants and also plaintiffs should be entitled to the sum of Three thousand four hundred ten dollars ($3,410.00).

It is the further *recommendation* of the Master Commissioner that the defendants take nothing by way of their counter claim.

It is the further *recommendation* of the Master Commissioner that upon the payment of the sums hereunder to the plaintiffs by the defendants, any judgments with regard to the immediate possession of the property by the plaintiffs should be discharged.

Respectfully Submitted,

/S/   John S. Pearce

John S. Pearce, Master Commissioner
(our emphasis)

We find no "conclusions of law" as such in this Report, but even were they included there is no prohibition against the tendering of such conclusions for consideration by the trial court. They would "not be binding upon the court . . .". Harvey & Townsend, 3 *Indiana Practice, Civil Code Commission Comments*, p. 462.[7]

---

7. [T]he court ordinarily would adopt the master's report, and as the Rule states, in an action tried to the court, without a jury, the court shall accept the master's findings of fact [and decision] "unless clearly erroneous." Harvey & Townsend, 3 *Indiana Practice* § 53.4(2), p. 465; TR. 53(E) (2).

Finally, the Lessees maintain that no exceptional circumstances were present to justify the trial court's appointment of the Master Commissioner. Again they have waived any such contention by failing to raise it in their Motion to Correct Errors. TR. 59(B), (G).

The trial court's judgment adopting the Master Commissioner's Report is affirmed.

Affirmed.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 334 N.E.2d 701.