**AERONAUTICS COMMISSION OF IN-DIANA, Appellant (Defendant below),**

v.

**The STATE of Indiana ex rel. EMMIS BROADCASTING CORPORATION, Appellee (Plaintiff below).**

**No. 2-981 A 314.**

Court of Appeals of Indiana, Second District.

Oct. 6, 1982.

Rehearing Denied Dec. 15, 1982.

Sullivan, J., concurred in result.

Linley E. Pearson, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellant.

Ronald E. Elberger, David R. Day, Bose, McKinney & Evans, Indianapolis, for appellee.

SHIELDS, Judge.

The State of Indiana, on behalf of appellant Aeronautics Commission of Indiana (ACI) I.C. 8–21–1–3 (Burns Code Ed.) (now repealed),[1] appeals the judgment of the trial court enjoining the ACI from exercising jurisdiction over the construction, by Emmis Broadcasting Corporation (Emmis), of a guyed FM radio tower in Shelby County, Indiana.

Reversed and remanded.

On March 23, 1979 Emmis entered into an agreement to purchase the assets, including the licenses and permits issued by the Federal Communications Commission necessary for the operation of radio station WENS–FM in Shelby County. The agreement was conditioned upon the grant by the Federal Communications Commission (FCC) of a construction permit for a change in tower

---

1. Effective July 1, 1981, our legislature adopted I.C. 8–9.5–5–9 (Burns Code Ed., Supp.1981) which provides:

 "On July 1, 1981, all powers, duties, and liabilities of:

 (1) *The aeronautics commission* (IC 8–21–1–3 [repealed] );

 (2) The airport authority (IC 8–21–9–1 [repealed] ) and

 (3) The division of public transportation (IC 4–3–7.5 [repealed] );

 are transferred to the department of transportation, as successor agency." (emphasis added)

site and its written consent to the assignment of licenses. The agreement, by terms set forth in article seven, was due to expire on March 23, 1981 if approval for assignment of licenses and change of tower site could not be procured.

Following execution of the agreement, Emmis requested a feasibility study from the Federal Aviation Administration (FAA) regarding a change in situs of the station's tower.[2] On December 14, 1979 the FAA completed its study and determined the optimum location for construction of the new tower was near Fairland, Indiana at a maximum height of 1449 feet AMSL (above mean sea level). Emmis then petitioned the FAA, pursuant to 49 U.S.C.A. § 1301 *et seq.* for an aeronautical study and determination of no hazard to air navigation. The ACI received notice from the FAA of the proposed aeronautical study and advised Emmis that, pursuant to the High Structures Safety Act, I.C. 8–21–7–1 *et seq.* (Burns Code Ed., Repl. 1980), a permit must also be obtained from the ACI prior to construction of the tower. Emmis promptly submitted an application for approval of construction of the radio tower with the ACI.

In addition, Emmis applied for a special use authorization with the local zoning board, the Shelby County Board of Zoning Appeals. The Board approved the application for special use subject to a number of conditions which were fully met and satisfied by Emmis and are not relevant here.

The FAA, on March 17, 1980, issued a determination of no hazard to air navigation regarding the proposed tower. However, on December 15, 1980 the ACI notified Emmis in writing that its application for permission to erect the proposed tower at Fairland was denied. Emmis, acting pursuant to I.C. 8–21–7–7, requested a public hearing concerning the denial of its application. On January 6, 1981 Emmis filed a petition to dismiss proceedings with the

ACI on the grounds the Commission lacked subject matter jurisdiction over construction of the tower. At a hearing held January 16, 1981 the ACI denied Emmis's motion to dismiss and set the formal hearing regarding the application for March 6, 1981.

With the deadline for its agreement to acquire the station about to expire and the ACI apparently unwilling to expedite matters, Emmis filed a verified complaint in Marion Superior Court on February 19, 1981 seeking declaratory and injunctive relief. In its complaint Emmis contends the Shelby County Board of Zoning Appeals, instead of the Commission, had subject matter jurisdiction over the construction of the tower. ACI filed its answer to the verified complaint and also filed a counterclaim in which it sought declaratory and injunctive relief prohibiting the radio station from erecting the tower. On March 19, 1981 the trial court granted Emmis's petition for relief, thereby enjoining ACI from interfering with construction of the tower. It also dismissed ACI's counterclaim with prejudice. The following issues are presented on appeal:

1) Whether construction of the tower subsequent to the decision of the trial court renders the case moot;

2) Whether FAA regulations concerning height restrictions pre-empt the ACI from enforcing the High Structures Safety Act; and

3) Whether the ACI did *not* have jurisdiction in the present case.

I

The first issue presented for our review is whether Emmis's construction of the radio tower subsequent to the decision of the trial court renders the case moot. Emmis contends the fact the tower has already been built and is fully operational renders any appellate opinion affording relief to the ACI strictly meaningless. We disagree.

2. The FCC is vested with authority to regulate the proposed construction and maintenance of broadcast towers. However, questions as to whether a proposed antenna presents a hazard to air navigation are referred by the FCC to the FAA pursuant to rules and regulations promulgated by the FCC. 47 C.F.R. § 17.

■ Where there is no question of general public interest and no issue in dispute between the parties on which a court could grant relief by any judgment it might render, a case must be deemed moot. *Ingmire v. Butts,* (1975) 166 Ind.App. 139, 334 N.E.2d 701. In essence, one may not initiate proceedings merely to obtain a judicial declaration there was wrongdoing. Quite to the contrary, it is well settled the absence of a justiciable controversy relieves courts of the futile function of passing judgment on abstract issues. *Snyder v. Mouser,* (1971) 149 Ind.App. 334, 272 N.E.2d 627.

■ In the present case we note the Aeronautics Commission is afforded a panoply of remedies with which it may effectively administer the High Structures Safety Act. I.C. 8–21–7–11 provides:

"In addition to any other remedy, *the commission may institute in any court of competent jurisdiction an action to prevent, restrain, correct or abate any violation* of the provisions of this act [8–21–7–1—8–21–7–15] or of any rules, regulations or orders of the commission issued pursuant thereto. The court may grant such relief, by way of injunction or otherwise, as may be proper under all the facts and circumstances of the case in order to fully effectuate the purposes of this act and the rules, regulations and orders of the commission issued pursuant thereto." [Emphasis added.][3]

The broad language of the above section contemplates not only actions initiated to prevent future breaches of the act and of the Commission's orders, but also proceedings to rectify or correct existing violations. We thus find Emmis's contention the matter is moot because the tower has been constructed and is fully operational to be wholly without merit. An appellate opinion affording the ACI relief would not necessarily be meaningless.

Emmis argues, however, assuming the existence of available remedies, ACI's failure to appeal from the dismissal with prejudice of its counterclaim deprives the Commission of any means to enforce compliance with the Act. The radio station asserts the dismissal is conclusive of the rights of the parties, and therefore is *res judicata* as to matters which might have been litigated. Hence, ACI's failure or neglect to appeal from an adverse judgment as to its counterclaim bars any future action in the courts to restrain or otherwise prevent violation of its order and the High Structures Safety Act.

■ It is true that a dismissal of a claim with prejudice is a dismissal on the merits. *Midway Ford Truck Center v. Gilmore,* (1981) Ind.App., 415 N.E.2d 134. It is thus conclusive of the rights of the parties and *res judicata* as to those matters which might have been litigated. In addition, arguments raised in a motion to correct error but not advanced on appeal are deemed waived. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *Yerke v. Batman,* (1978) Ind.App., 376 N.E.2d 1211. Therefore, the dismissal of ACI's counterclaim and the failure of the Commission to appeal such dismissal could conceivably preclude it from bringing future actions to enforce its jurisdiction over construction of the radio tower.

■ A careful examination of ACI's brief on appeal, however, leads us to conclude the issue of the dismissal of the counterclaim was properly preserved. In its statement of issues on appeal the Commission provides:

"I. Whether it was error to determine that the provisions of the Shelby Zoning Ordinance are at least as restrictive as the provisions of the Indiana High Structures Safety Act, and to issue, therefore, a permanent injunction and writ of prohibition against the Aeronautics Commission of Indiana on ground that it has no jurisdiction to permit or deny the erection

**3.** This section was repealed effective July 1, 1981 by Acts 1980, P.L. 74, § 434.

*See* I.C. 8–9.5–5–8(7) (Burns Code Ed., Supp. 1982) for the power vested in the successor Department of Transportation to "[s]ue and be sued."

of the transmitting tower of the appellee *and to dismiss the counterclaim of the Aeronautics Commission of Indiana."* (Emphasis added.)

Emmis is correct in noting that the Commission does not devote a separate section of the argument portion of its brief to the issue of whether the trial court erred in dismissing the counterclaim with prejudice. However, we do not find this alleged deficiency fatal in view of the fact the same authorities and principles are equally applicable to both the question raised by Emmis's petition for relief and ACI's counterclaim. As the trial court stated in making its final ruling of March 19, 1981:

"M. Inasmuch as this Court has determined that the ACI lacks any and all jurisdiction and authority over the construction and erection of the aforementioned radio tower, and over the application of Emmis for a permit for its proposed radio tower at Fairland, Indiana, the defendant's (ACI's) counterclaim, filed pursuant to I.C. 8–21–7–11, is subject to dismissal since there are no violations of the High Structures Safety Act by Emmis by reason of the exemption therefrom of Shelby County pursuant to I.C. 8–21–7–13(b)." (R. 489).

The trial court's order unequivocally reveals the dismissal of ACI's counterclaim is premised on the same theory and authority as that utilized in granting Emmis's petition for relief: ACI's purported lack of jurisdiction in the matter. Therefore, while the state's brief may be somewhat inartfully drafted, we conclude it did not waive the issue on appeal.[4]

## II

Next Emmis contends that the federal government's regulation of navigable airspace is so pervasive that Congress has impliedly pre-empted the field, and thus the Indiana High Structures Safety Act, I.C. 8–21–7–1 to 15, which regulates the height of structures near airports, is invalid under the supremacy clause of the United States Constitution. We disagree because Congress has evidenced a purpose to leave legal enforcement of regulations pertaining to high structures and air safety to state and local governments.

The pre-emption doctrine is bottomed in the supremacy clause of the United States Constitution, article VI, clause 2:

"This constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

"Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana,* (1981) 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576. A federal law pre-empts state law wherever the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Perez v. Campbell,* (1971) 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (quoting *Hines v. Davidowitz,* (1941) 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581). A congressional purpose to displace state law may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for states to supplement it. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforce-

---

4. Moreover, we direct the parties' attention to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7) which states in pertinent part:

"If substantially the same question is raised by two or more errors alleged in the motion to correct errors, they may be grouped and supported by one argument."

In addition, appeals will be decided on the merits whenever possible in cases, like the present one, which involve questions of great public interest such as those where the health, safety, and general welfare of the public may be affected. *See Costanzi v. Ryan,* (1977) 174 Ind.App. 454, 368 N.E.2d 12.

ment of state laws on the same subject. *Maryland v. Louisiana,* 451 U.S. at 746, 101 S.Ct. at 2129 (citing *Pennsylvania R. Co. v. Public Serv. Comm'n.,* (1919) 250 U.S. 566, 40 S.Ct. 36, 64 L.Ed. 1142; *Cloverleaf Butter Co. v. Patterson,* (1942) 315 U.S. 148, 62 S.Ct. 491, 86 L.Ed. 754; *Hines v. Davidowitz*). Of course, a state statute is void to the extent it conflicts with a federal statute —if, for example, "compliance with both federal and state regulations is a physical impossibility." *Maryland v. Louisiana,* 451 U.S. at 747, 101 S.Ct. at 2129 (quoting *Florida Lime and Avocado Growers, Inc. v. Paul,* (1963) 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248).

■ The determination whether Congress intended to pre-empt state regulation "is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* (1981) 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258. In deciding whether any conflict is present, a court must look to the effect, rather than the purpose, of the state law. *Perez v. Campbell,* 402 U.S. at 652, 91 S.Ct. at 1712. Finally, in *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.* the United States Supreme Court stated:

"The [pre-emption] doctrine does not and could not in our federal system withdraw from the States either the 'power to regulate where the activity regulated [is] a merely peripheral concern' of federal law, *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 243 [79 S.Ct. 773, 778, 3 L.Ed.2d 775] (1959), or the authority to legislate when Congress could have regulated 'a distinctive part of a subject which is peculiarly adapted to local regulation, ... but did not,' *Hines v. Davidowitz,* 312 U.S. 52, 68, n.22 [61 S.Ct. 399, 405 n.22, 85 L.Ed. 581] (1941)."

450 U.S. at 317, 101 S.Ct. at 1130.

■ The purported pre-emption conflict in the present case arises from ACI's regulation of the height of structures near airports pursuant to the Indiana High Struc-

tures Safety Act and the FAA's monitoring of the same subject in accordance with the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301–1542. The Federal Aviation Act of 1958 recognizes the threat that tall structures may pose to air safety and provides the FAA

"shall, by rules and regulations, or by order where necessary, require all persons to give adequate public notice, in the form and manner prescribed by the [Administrator], of the construction or alteration, or of the proposed construction or alteration, of any structure where notice will promote safety in air commerce."

49 U.S.C. §§ 1501, 1655(c)(1). Accordingly, the FAA has promulgated regulations which require each person who proposes construction or alteration of structures of particular dimensions and within specific proximity to airports to notify the FAA. 14 C.F.R. §§ 77.11, .13, .15. The FAA uses this information to make "[d]eterminations of the possible hazardous effect of the proposed construction or alteration on air navigation." 14 C.F.R. § 77.11(b)(2). The FAA regulations set out various standards against which proposals may be evaluated, *see* 14 C.F.R. § 77.23(a), and also may require the FAA to conduct aeronautical studies in certain circumstances, *see* 14 C.F.R. §§ 77.19(c)(3), .35(a). An initial hazard/no-hazard determination is made by a staff member in the FAA's Air Traffic Division, and that decision is final unless the FAA Administrator grants discretionary review. 14 C.F.R. §§ 77.37. However, once issued, a hazard/no-hazard determination *"has no enforceable legal effect."* (Our emphasis). *Aircraft Owners and Pilots Ass'n v. FAA,* (D.C.Cir.1979) 600 F.2d 965, 966. A hazard determination promotes air safety solely through "moral suasion" by encouraging the voluntary cooperation of sponsors of potentially hazardous structures. *Id.* Furthermore, while the FCC considers the FAA's classification in granting permits for the construction of broadcast towers, *id.,* is not *required* to follow a hazard classification in issuing a permit, 47 C.F.R. § 17.4(e), nor is the FCC *required* to order the owner to dismantle and remove an existing tower

if the FAA determines there is a reasonable possibility it constitutes a menace to air navigation, 47 U.S.C. § 303(q). We conclude, therefore, Congress has concerned itself with the potential hazards for air safety created by tall structures, but it has purposely left untouched a distinctive part of the subject—the legal enforcement of standards—peculiarly adapted to local regulation; thus the state may legislate concerning such local matters which Congress could have covered but did not. *Hines v. Davidowitz,* (1941) 312 U.S. 52, 68, n. 22, 61 S.Ct. 399, 405 n. 22, 85 L.Ed. 581; *accord Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*[5]

### III

The final issue addressed on appeal is whether the trial court erred in concluding the Aeronautics Commission of Indiana did *not* have jurisdiction over construction of the radio tower.

■■■ The Aeronautics Commission is the agency charged with the administration and enforcement of the High Structures Safety Act: I.C. 8–21–7–1 *et seq.* The purpose of the statute is to protect the safety and welfare of persons and property in the air and on the ground by ensuring the navigable air space overlying the state is maintained in an unobstructed condition. Toward this end the use of land, and in particular the height of structures near airports, is closely regulated. I.C. 8–21–7–3 provides:

**5.** In reaching our conclusion we are mindful of the Illinois Appellate Court's decision in a case involving a county ordinance which regulated the height of structures near airports:

"Air commerce is not being controlled where the height of buildings within a certain distance from an airport is regulated by the county. What is instead being controlled is the *construction of buildings.* We do not think *Priesler* supports the theory urged by plaintiff.

"The evidence in this record is clear that Section 4.11 is a necessary and important part of the County's efforts to promote and protect the public health, safety, comfort and general welfare of persons nearby a designated airport. The evidence pertaining to potential flight hazards and the safety of the peo-

"Unless a permit has been issued by the commission, a person may not:

(a) Erect, add to the height of or replace any structure, unless the replacement only involves the repair, maintenance or restoration of a structure in existence on August 31, 1979:

(1) Within two thousand feet [2,000'] from the nearest airport boundary, that will result in a structure extending higher than a height above the level of such runway or landing strip determined by the ratio of one foot [1'] vertically to every twenty feet [20'] horizontally measured from the nearest boundary;

(2) At any other place within this state not otherwise covered in this section which will result in a structure extending more than five hundred feet [500'] above the highest point of land within a one [1] mile radius from the structure;

(3) At any other place within the state which will result in a structure extending to a height of more than one hundred feet [100'] above the level of the runway or landing strip or one hundred feet [100'] above the level of the ground, whichever is the greatest, within a four [4] statute mile radius of the geographical reference point of the airport;

(4) Within the established guidelines for airport approach zone or zones as set forth in applicable Federal Air Regulations including but not limited to Federal Air Regulations Part 77; or

ple living nearby as testified to by the Navy officer, in our opinion, illustrates the need for control in this field. Pre-emption is not at issue here because the goals of the federal and local governments are different. The FAA is concerned with safe air traffic and has adopted regulations for the area at the end of runways—the approach zone. On the other hand, the County is concerned with the health, welfare and safety of people who live or work near an airfield. We hold the ordinance as applied to this property does not conflict with FAA regulations and does not violate the supremacy clause of Article VI of the United States Constitution."
*LaSalle National Bank v. County of Cook,* (1975) 34 Ill.App.3d 264, 275, 340 N.E.2d 79, 87–88.

(5) Where such structure would impose a restriction to or increase the instrument minimum heights of an approach to any existing or proposed airport as set forth in Federal Air Regulations Part 77 or an approved airport master plan or airport layout plan; or

(b) Erect a residential building or other building designed for noise sensitive uses within an area lying one thousand five hundred feet [1,500'] on either side of the extended center line of a runway for a distance of one [1] nautical mile from the boundaries of any public use airport."

■ In the present case Emmis erected a 1449 foot[6] AMSL FM radio tower approximately 2.36 nautical miles northwest of Shelbyville Airport. It exceeded the height limitations of both I.C. 8–21–7–3(a)(2) and (3). The ACI therefore contends Emmis was required to obtain a permit prior to construction. Emmis, however, directs our attention to I.C. 8–21–7–13(b) which states:

"(b) This chapter applies to any jurisdiction in the state except those areas regulated under a zoning ordinance adopted by a city council, a county council, or a city-county council of a consolidated city and county if the zoning ordinance regulates the erection of tall structures or residential buildings at other buildings designed for noise sensitive uses and *if the zoning ordinance is at least as restrictive as the provisions of this chapter.*" (Emphasis added.)

The trial court determined the Shelby County Zoning Ordinance is "at least as restrictive" as the High Structures Safety Act and therefore concluded the Act is not applicable in the instant matter. According to the trial court, the zoning ordinance incorporated by reference Part 77 of the Federal Aviation Administration rules and regulations promulgated pursuant to the Federal Aviation Act of 1958. 14 C.F.R. 77. The regulations in question comprise a complex regulatory scheme which outlines procedures for making aeronautical studies to determine if proposed structures interfere with safe air navigation. Section 77.23 pro-

vides the standards for determining when a proposed structure constitutes an obstruction to air navigation. It states in pertinent part:

"(a) An existing object, including a mobile object, is, and a future object would be, an obstruction to air navigation if it is of greater height than any of the following heights or surfaces:

(1) A height of 500 feet above ground level at the site of the object.

(2) A height that is 200 feet above ground level or above the established airport elevation, whichever is higher, within 3 nautical miles of the established reference point of an airport, excluding heliports, with its longest runway more than 3,200 feet in actual length, and that height increases in the proportion of 100 feet for each additional nautical mile of distance from the airport up to a maximum of 500 feet."

Where a proposed structure will exceed FAA obstruction standards, the FAA will initiate an aeronautical study to ascertain the effect such object will have on air navigation. If the impact on navigation is adverse, the agency may make a "hazard determination" for whatever effect that may have.

According to the findings of the trial court, the FAA regulations, and section 77.-23 in particular, when coupled with various restrictions contained in the zoning ordinance, are "at least as restrictive" as the High Structures Safety Act. Therefore, the Act is not applicable and the Aeronautics Commission is precluded as a matter of law from exercising jurisdiction over the radio tower.

Assuming *arguendo* the zoning ordinance does, indeed, incorporate by reference Part 77 of the FAA rules and regulations, we are unable to conclude the provisions of the ordinance, at least with regard to construction of tall structures, is "at least as restrictive as the High Structures Safety Act." Quite to the contrary, we find the relevant provisions of the High Structures Safety

---

6. 1449 feet AMSL exceeds 500 feet ground level at the instant site.

Act to be more stringent than the rules of either the FAA or the zoning ordinance.

In support of its determination that the Shelby County Zoning Ordinance and the FAA provision allegedly incorporated therein are at least as restrictive as the High Structures Safety Act, the trial court made the following findings:

"H. In direct contrast to the absence of standards, rules or regulations of the ACI, and with greater specificity and with more restrictions than are administered by the ACI, the Shelby County Board of Commissioners duly adopted and promulgated a Zoning Ordinance for Shelby County, Indiana, in October, 1972, which was revised during August, 1974, and adopted as amended on December 2, 1974, which provides at Chapter 4, Section 4.02 D 1, at pages 3 and 4 of said Chapter 4 ('General Provisions') that:

No structure shall be erected, converted, enlarged, reconstructured or structurally altered to exceed the height limit herein established for the district in which the structure is located, except that penthouses or roof structures for the housing of elevators, stairways, tanks, ventilating fans, or similar equipment required to operate and maintain the structure, and fire or parapet walls, skylights, towers, steeples, flagpoles, chimneys, smokestacks, radio and television aerials, wireless masts, electric and telephone service poles, water tanks, silos, storage hoppers, elevators or similar structures may be erected above the height limits herein prescribed. *No such structure shall be erected to exceed by more than twenty-five (25) feet the height limits of the district in which it is located.*

and which provides at Chapter 4, Section 4.06, A, B, and C, at pages 9 and 10 of said Chapter 4 ('Regulations Governing Airports and Their Surroundings') that:

A. Airports and their surroundings are subject to the *rules and regulations of the Federal Aviation Administration.* (emphasis supplied)

B. Height of structures in areas surrounding the boundaries of airports not having an established approach plan shall be established by the County Board.

incorporating thereby Part 77 of the Federal Aviation Administration rules and regulations."

In addition, the trial court cited numerous sections of the zoning ordinance concerning the regulation of the agricultural and manufacturing district in which the tower was located and the procedures for making application for special use permits. The court then concluded:

"L. Clearly, it would be an absurdity in comparing the comprehensive provisions of the Shelby County Zoning Ordinance and the finite, detailed FAA rules, regulations, standards and criteria with the very limited provisions of the High Structures Safety Act to reach any contrary decision."

We agree with the trial court's conclusion that the zoning ordinance and the FAA rules and regulations incorporated therein are more comprehensive and broad in scope than the High Structures Safety Act. However, the inquiry here must by its very nature be limited to the provisions of both the ordinance and the act which relate directly to the construction of high structures and the effect such objects have on the safe passage of air navigation. Otherwise, it is reasonable to speculate the zoning ordinances of most counties and municipalities would be deemed more comprehensive in scope than the High Structures Safety Act, which has as its stated purpose a rather narrow function.

When the sections of the zoning ordinance and the FAA regulations concerning the construction of tall structures are compared with analogous rules contained in the High Structures Safety Act, we are unable to agree with Emmis's contention that the zoning ordinance is "at least as restrictive" as the Act. The lone section of the zoning ordinance concerning the construction of tall structures and the effect of such structures on air navigation is found at § 4.06 of the ordinance:

"4.06 REGULATIONS GOVERNING AIRPORTS AND THEIR SURROUNDINGS

A Airports and their surroundings are subject to the rules and regulations of the Federal Aviation Administration.

B Height of structures in areas surrounding the boundaries of airports having an established approach plan that has been approved by the Federal Aviation Administration shall be in accordance with requirements set forth in the approach plan.

C Height of structures in areas surrounding the boundaries of airports not having an established approach plan shall be established by the County Board."

Under 4.06(A) the trial court determined, as we noted above, that the zoning ordinance incorporated by reference Part 77 of the FAA rules and regulations promulgated pursuant to the Federal Aviation Act of 1958. Section 77.23 of the FAA rules and regulations provides that any object 500 feet above ground level, or 200 feet above ground level or the established airport elevation within three nautical miles of an airport, is an obstruction to air navigation and a determination the object does not pose a threat to air navigation must then be made. Under the High Structures Safety Act, a permit is required for any structure extending to a height 500 feet above the highest point of land within a *"one-mile"* radius of the object or for a structure extending to a height of more than 100 feet above the level of the runway or the level of the ground, whichever is greater, within a four statute mile (3.5 nautical mile) radius of an airport.

Here, the radio tower was erected 2.36 nautical miles from the Shelbyville Airport. In such circumstances the FAA regulations would allow an object to be constructed one-half nautical mile closer to an airport and one hundred feet higher than the High Structures Safety Act before permission must be obtained from the proper agency. Because the FAA regulations, as incorporated by reference into the zoning ordinance, would allow towers to be built without permit or authorization in instances where the High Structures Safety Act would require a permit, we find the trial court erred in concluding the zoning ordinance was at least as restrictive as the Act.

This conclusion, we believe, is warranted by a close and careful analysis of I.C. 8–21–7–13 and its legislative history. Prior to 1977, I.C. 8–21–7–13 provided in relevant part:

"This act shall not apply in *any instance* where the proposed erection, addition to or replacement of a structure is located in an area for which airport zoning regulations have been adopted pursuant to law are in effect." (emphasis added.)

In 1977 our legislature amended section 8–21–7–13 to its present form. Acts 1977, P.L. No. 114 § 4. It now provides the High Structures Safety Act does not apply to those jurisdictions regulated under a zoning ordinance if the ordinance regulates the construction of tall structures *and* "if the zoning ordinance is at least as restrictive as the *provisions* of this chapter." (emphasis added.)

 It is well established that a statutory amendment changing the phraseology from that of the original statute will raise a presumption that a change in meaning was also intended. *Pierce Governor Co. v. Review Board of Indiana Employment Security Division,* (1981) Ind.App., 426 N.E.2d 700. Our legislature has specifically made its intent quite clear. While the prior law provided local zoning ordinances were to pre-empt operation of the High Structures Safety Act in *any instance* where airport zoning regulations had been adopted, under the present statute local zoning ordinances take precedence only where they regulate tall buildings and they are at least as restrictive as all the provisions of the Act. The legislature's use of the word "provisions" in a plural context is significant. To hold otherwise would require the courts to engage in a burdensome and often futile case-by-case analysis to determine in which instances the Act applied and in which a local zoning ordinance applied. This procedure would, no doubt, engender substantial uncertainty, especially in view of the fact that zoning ordinances by their very nature are generally more comprehensive in terms of subjects covered than the High Struc-

tures Safety Act, a statute with a narrow well-defined purpose. Moreover, continuing judicial intervention in the application of the High Structures Safety Act would be unduly burdensome and time consuming for both the ACI and on parties attempting to comply with the Act's provisions.

We therefore conclude the trial court erred as a matter of law when it determined the Aeronautics Commission of Indiana did not have jurisdiction in the present matter. In at least one very significant area, the erection of tall structures in areas surrounding airports, the High Structures Safety Act is more restrictive than the Shelby County Zoning Ordinance. The matter is therefore reversed and remanded to the trial court for proceedings consistent with this opinion.[7]

Reversed and remanded.

SULLIVAN, J., concurs in result.

YOUNG, J., sitting by designation, concurs.

---

**7.** We specifically note exhaustion of administrative remedies was not argued as an issue in this appeal. *E.g., Indiana Civil Rights Comm'n v. Meridian Hills Country Club,* (1976) 171 Ind. App. 341, 357 N.E.2d 5.