**Dannette ROSNER, et al., Appellants,**

v.

**Lenore M. SCHACHT and Liquor Locker, Inc., Appellees.**

No. 3–1282A332.

Court of Appeals of Indiana, Third District.

Aug. 30, 1983.

Rehearing Denied Nov. 1, 1983.

Stephen R. Snyder, Jon A. Bragalone, Dunten, Beckman, Lawson & Snyder, Fort Wayne, for appellants.

James S. Butts, Thomas R. Lemon, Rasor, Harris, Lemon & Reed, Warsaw, for appellees.

STATON, Judge.

Dannette Rosner and James E. Fry, Jack Wells and Ernest Rogers, doing business as Fry Wells Rogers Realty (realtors) sued Lenore M. Schacht (Schacht) and Liquor Locker, Inc. to collect a commission on the sale of Liquor Locker, Inc. by Schacht as provided for in an exclusive listing contract between the realtors[1] and Schacht. The realtors sought $28,900.00 plus attorney fees of $9,000.00 and costs. The trial court found in favor of the realtors and against Schacht and awarded damages in the sum of $10,-000.00 plus $2,450 in attorney fees, plus 12% interest from the date of judgment and costs. The realtors appeal from this judgment. Their appeal raises the following issues:

 (1) Whether the trial court erred in admitting extrinsic evidence of oral agreements which varied the terms of the listing agreement;

 (2) Whether the trial court erred in determining the damages to be awarded under the contract;

 (3) Whether the trial court erred in failing to award pre-judgment interest; and

 (4) Whether the trial court awarded the realtors an insufficient amount for the attorney fees.

Affirmed in part; remanded for recalculation of damages.

Rosner, a licensed real estate broker, signed an exclusive listing contract with Schacht, for the sale of Liquor Locker, Inc. in November, 1978. At the time that agreement was signed, certain prospective buyers were excluded from the agreement because Schacht had talked with them previously about the sale. A second listing agreement was signed on January 26, 1979. After that agreement was signed, Rosner became associated with Fry Wells Rogers Realty, so a third agreement was signed on April 10, 1979. This agreement ran from April 10 through September 10, 1979. The agreement provided for the payment to the broker of a commission of 7% of the sales price, but not less than $10,000.00.[2] The agreement also provided, in part:

"If said real estate is sold or exchanged within 180 days after the expiration of the term of this agreement to any person, firm or corporation with whom during the exclusive period of this listing you, your representatives or myself or ourselves had negotiations relative to the purchase of said property for said price stated herein, or for a price and upon terms acceptable to me or us, I or we agree to pay you a commission equal to 7 per cent of the gross sales or exchange price thereof, provided, however, that this extension clause shall not be applicable and binding during the term said real estate is relisted with some other licensed Realtor under an exclusive listing con-

---

1. The contract was signed by Rosner and Schacht.

2. The price set for the property in the agreement was $425,000.00.

tract upon or after the term of this listing agreement. This contract is enforceable without relief from valuation and appraisement laws and with attorney fees." (Record, p. 114).

Prior to September 10, 1979, Rosner had discussed the property with Brooks Pinnick, who was acting on behalf of his son. Tal-Tim Enterprises, Inc., a corporation owned by Tal Smith and Tim Pinnick executed with Schacht a contract for the sale of the business on September 17, 1979 and a contract for the sale of the real estate on October 15, 1979.[3] Upon learning of the sale, Rosner demanded that Schacht pay her 7% commission.

## I.

### Admission of Parol Evidence

■ The trial court issued a general judgment in favor of the realtors. A general judgment must be affirmed if it can be sustained on any legal theory supported by the evidence. *English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302 (*trans. denied*). In reviewing the judgment, we will not reweigh the evidence nor judge the credibility of the witnesses.

■ In their brief, the realtors argue that the trial court erroneously admitted parol evidence to vary the terms of the contract. In making this argument, they attack a judgment rendered in their favor. Their position at trial and on appeal is that the contract was enforceable. The evidence they attack was offered to show that the contract was not enforceable against this particular purchaser. The trial court's judgment in favor of the realtors must reasonably be based on a determination that the contract was enforceable. Therefore, we can see no harm to the realtors resulting from the admission of the challenged evidence.[4] Because the realtors prevailed at

trial, we do not need to consider whether the evidence was properly admitted.[5]

## II.

### Amount of Commission

■ The realtors contend that the trial judge erred in awarding damages in the amount of $10,000.00. They assert that the commission due under the contract is 7% of the sales price. We agree.

The commission provided for in the contract is the appropriate measure of damages. *See Sutton v. Roth, Wehrly, Heiny, Inc.* (1981), Ind.App., 418 N.E.2d 229, 233 (*trans. denied*). The contract states that the commission shall be 7% of the purchase price "but not less than $10,000,00." (Record, p. 114). In the clause applicable to sales made within 180 days after the contract term expires, the contract provides for a 7% commission to be paid. In this case, the sales were made after the contract expired and within the 180 day period. The trial court determined that the contract was enforceable against Schacht. The language of the contract is clear and unambiguous, so it should be given its plain and ordinary meaning. *Huntington Mut. Ins. Co. v. Walker* (1979), Ind.App., 392 N.E.2d 1182 (*trans. denied*). The contract requires that a commission in the amount of 7% of the purchase price be awarded. Therefore, we remand this case to the trial court for recalculation of the damages.

## III.

### Pre-Judgment Interest

■ The realtors also contend that they are entitled to prejudgment interest at the rate of 8% per year from November 12, 1979. Although prejudgment interest as authorized by IC 1976, 24-4.6-1-103 (Burns Code Ed., 1982 Repl.), shall be awarded on the commission under a real estate contract

---

3. The sales price of the business was $89,000.00; the sales price of the real estate was $325,000.00.

4. The realtors' argument that the trial court used the parol evidence to modify the contract terms is nothing more than conjecture.

5. Judgment of the trial court was rendered in favor of the realtors; therefore, we do not understand why they argue on appeal that the admission of extrinsic evidence constitutes reversible error. (Brief of appellants, pp. 11, 14).

if that contract is breached, *see Blue Valley Turf Farms v. Realestate Market* (1981), Ind.App., 424 N.E.2d 1088, the realtors did not seek prejudgment interest at any stage in the proceedings before the trial court.

In their Motion to Correct Errors, the realtors made only passing mention of prejudgment interest. Under the allegation that the trial court's decision was contrary to the evidence, the following reference is made:

> "Plaintiffs received no sums in the form of commission as a result of either of such transfers. That the total commission earned as a result of the sales is Twenty Eight Thousand Nine Hundred Eighty Dollars ($28,980.00). That interest on said sum from the dates of closing to the date of trial is Six Thousand Five Hundred Eighty-two and 80/100 Dollars ($6,582.80)."

(Record, p. 2). Under their argument that the damages awarded are inadequate, the realtors again mention interest:

> "The judgment to which plaintiffs are entitled must be computed as follows: seven percent (7%) of Four Hundred Fourteen Thousand Dollars ($414,000.00)

| | |
|---|---|
| ($414,000.00) | $28,980.00 |
| Interest on $89,000 from September 17, 1979 to August 10, 1982 | $ 1,448.09 |
| Interest on 7% of $325,000 from October 15, 1979 to August 10, 1982 | $ 5,134.71 |
| Attorney's fees | $ 9,630.00 |
| Total | $45,192.80" |

(Record, p. 3).

Ind.Rules of Procedure, Trial Rule 59(D)(2) provides:

> "In all cases in which a motion to correct error is made, *such motion shall separately state the error or errors which are claimed.* The error claimed is not required to be stated under, or in the language of the bases for the motion allowed by this rule, by statute, or by other law. *Each claimed error shall be stated in specific rather than general terms, and shall be accompanied by a statement of the facts and grounds upon which the errors are based.*" (Emphasis added).

Specificity in stating the errors is required because the primary purpose of the Motion to Correct Errors is to provide the trial court with the opportunity to remedy any errors in its judgment. The trial judge cannot correct any error he may have made unless the specific facts and grounds for the claimed error are presented to him, *Stanley v. Fisher* (1981), Ind.App., 417 N.E.2d 932, 934–45 (*trans. denied*); *Bennett v. State* (1973), 159 Ind.App. 59, 62, 304 N.E.2d 827, 829, with sufficient particularity to make him aware of the precise legal issue involved. *Cook v. Hahn* (1980), Ind.App., 403 N.E.2d 834, 838. The references in the realtors' Motion to Correct Errors are not sufficiently specific to raise the issue of their entitlement to prejudgment interest dating from November 2, 1979. *Cf. Ingmire v. Butts* (1975), 166 Ind.App. 139, 334 N.E.2d 701. Therefore, we will not consider this issue on appeal.

## IV.

### Award of Attorney Fees

 The realtors contend that the trial court erred in awarding attorney fees of $2,450.00 in light of testimony that the case was being handled under a contingency fee arrangement which provided that the attorney fee would be one-third of the judgment. An award of damages will not be reversed if it is within the scope of evidence before the trial court. *Indiana U. v. Indiana Bonding & Sur.* (1981), Ind.App., 416 N.E.2d 1275, 1288 (*trans. denied*). During the trial, counsel for the realtors informed the court that counsel for the defense would stipulate that thirty-five hours was a reasonable time for the legal work involved and that $70.00 per hour was a reasonable fee. Therefore, the award of $2,450.00 was within the range of the evidence before the trial court, and we will not overturn the court's determination.

Affirmed as to the judgment; remanded for recalculation of damages in accordance with this opinion.

CONOVER, P.J. (by designation), concurs.

HOFFMAN, P.J., concurs in result with opinion.

HOFFMAN, Presiding Judge, concurring in result.

I concur in the result of the majority opinion; however, I cannot agree with part I of the opinion. The majority opinion finds that "[t]he language of the contract is clear and unambiguous, so it should be given its plain and ordinary meaning." *Huntington Mut. Ins. Co. v. Walker,* (1979) Ind. App., 392 N.E.2d 1182 (*trans. denied*). With this statement I agree and therefore parol evidence to vary the term of the contract is not permissible. It was error for the trial court to permit the parol evidence. If the parol evidence was admissible, the judgment of the trial court should be affirmed. The parol evidence would support the award of only $10,000 in damages.